# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 26, 2001 Session

## JOHN T. BELL, ET AL. v. RICHARD GENE NOLAN, ET AL.

### Appeal from the Circuit Court for Coffee County
### No. 27731    John W. Rollins, Judge

---

### No. M2000-02684-COA-R3-CV - Filed September 14, 2001

---

The parents of a woman who died after being assaulted by her husband on the premises of an American Legion post filed a wrongful death claim, which named the husband and the American Legion post as defendants. The parents alleged that the Legion's employees had failed to render assistance to the injured woman. The trial court dismissed the complaint against the American Legion, reasoning that the surviving spouse is the only party entitled to maintain an action for the wrongful death of the other spouse. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Peter V. Hall and Robert O. Bragdon, Murfreesboro, Tennessee, for the appellants, John T. Bell and Myra A. Bell.

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the appellee, Memorial 39, Post #43, American Legion.

Richard Gene Nolan, Pro Se.

### OPINION

### I. An Untimely Death

This case arose from the tragic death of thirty-four year old Beverly Jean Nolan. On July 8, 1995, Ms. Nolan and her husband, Richard Gene Nolan, were at the American Legion Hall in Tullahoma. The Legion operates a restaurant and provides meeting rooms and social activities on its premises.

According to the Complaint later filed by Ms. Nolan's parents (and given the posture of this case, we must accept their account as true) Mr. and Ms. Nolan had an argument at about 8:00 p.m.,

which prompted Ms. Nolan to leave the building and walk out to the parking lot. Mr. Nolan immediately followed her, and struck her in the head with enough force to knock her to the ground. Ms. Nolan's visible injuries were a contusion and laceration on her face. She got up in a dazed condition, and although unsteady on her feet, re-entered the restaurant.

Employees of the restaurant, including a security guard named Don Cruse, allegedly asked Beverly Nolan what happened to her, and asked Richard Nolan if he had struck his wife. Mr. Nolan acted unconcerned, and stated that he would get his wife's car and take her away. When Mr. Nolan left, Mr. Cruse held Ms. Nolan to keep her from falling. A nurse who was nearby suggested that Ms. Nolan was seriously injured, and that Mr. Cruse should call an ambulance to take her to the hospital.

Ms. Nolan's parents allege that as Mr. Nolan was driving the automobile up to the restaurant, Ms. Nolan began to collapse, and that as she did so, she whispered to Mr. Cruse that her husband did indeed strike her, and that this was not the first time he did so. She also allegedly asked Mr. Cruse if she had to leave with her husband, and he said she did not. Ms. Nolan then collapsed, and never regained consciousness.

When Mr. Nolan arrived with the automobile, he did not get out of the vehicle. Instead, as Mr. Cruse placed the unconscious woman into the passenger seat, Mr. Nolan grabbed his wife by her clothes, and pulled her into the car. He then drove her home. After arriving home, Mr. Nolan called his wife's parents, John and Myra Bell, and without revealing his assault, told them that their daughter had fallen while drunk.

Mr. Bell went to the Nolan home to retrieve his daughter and bring her to his own home. At about 5:00 p.m. the following day, Ms. Nolan's condition was noticeably worse, and the Bells had her transported to a Tullahoma hospital. From there, she was carried by helicopter to Erlanger Hospital in Chattanooga, where she was pronounced dead of a traumatic subdural hematoma with massive brain infarction.

## II. Legal Proceedings

On May 17, 1996, John and Myra Bell filed a Wrongful Death Complaint as Beverly Nolan's surviving parents and next of kin. After Mr. Bell qualified as the administrator of his daughter's estate, the court granted his motion to be substituted in that capacity as the party plaintiff.

The Complaint named Richard Nolan as a party responsible for the death of Ms. Nolan. The Complaint also named "Memorial 39, Post #43, the American Legion, Tullahoma, Tennessee, a Tennessee Corporation," (hereafter, the American Legion), and its security guard Don Cruse, for failing to provide her protection or assistance. As the following discussion indicates, the case proceeded on two separate tracks. The claim against Richard Nolan resulted in a default judgment for the plaintiffs and assessment of damages. The claim against the American Legion was dismissed for failure to state a claim.

### a. Richard Nolan

Richard Nolan never answered the Bells' Complaint, and never responded to any of the pleadings or motions in the trial court in any way. On July 31, 1996, the trial court granted the Bells a default judgment against Mr. Nolan, and declared that the damages sustained by the plaintiffs would be determined at a hearing to be scheduled at a later date.

The record indicates that in addition to this civil action, Mr. Nolan had to face a Grand Jury a few months after the death of his wife, to determine if he should be held criminally responsible for her death. On January 5, 1996, the Grand Jury returned a No True Bill.

A hearing on damages was conducted in the presence of a jury in September of 2000. The jury found the damages sustained by the plaintiffs to total $250,400. Aside from medical and funeral expenses, The verdict form indicated damages of $32,000 for Ms. Nolan's pain and suffering, $100,000 for the loss of consortium of John and Myra Bell, and $100,000 in punitive damages. The jury found the pecuniary value of the life of Beverly Joan Bell Nolan to be zero.

On September 14, 2000, the trial court entered a Judgment on the Verdict, reading in pertinent part as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:
>
> 1. Plaintiff, John T. Bell as Administrator of the Estate of Beverly Joan Bell Nolan, deceased, have and recover of the Defendant Richard Gene Nolan the sum of $150,000.00.
> 2. Plaintiffs John T. Bell and Myra Bell, individually, have and recover of the Defendant, Richard Gene Nolan the sum of $100,000.00
> 3. Costs are adjudged against Defendant Richard Gene Nolan for which execution shall issue, if necessary.

The Plaintiffs subsequently filed a Motion to Alter or Amend Judgment and Motion for New Trial. They noted that a professor of economics had testified at trial that the pecuniary value of their daughter's life was $508,100, and they argued that the finding of the jury that her life had no pecuniary value was contrary to the undisputed proof. The trial court granted their motion on October 13, 2000, increasing the amount of the judgment in favor of John T. Bell, Administrator by $508,100, for a total judgment of $658,100.

### b. The American Legion

The American Legion and Don Cruse answered the Bell's Complaint on July 8, 1996, disputing several factual details, and denying that they breached any duty owed to the decedent. They also asserted several affirmative defenses, including comparative fault, and they moved to

dismiss the Complaint on the ground that the Bells had not stated a claim upon which relief could be granted. See Tenn. R. Civ. P. 12.02(6). Specifically, they challenged the Bells' right to maintain an action for wrongful death under Tennessee's wrongful death statute, Tenn. Code. Ann. § 20-5-106. The Bells subsequently dismissed Don Cruse voluntarily under Rule 41.01 of the Tennessee Rules of Civil Procedure, and amended their Claim for Damages by adding a claim for loss of consortium.

The defendant's argument about the Wrongful Death Statute apparently had an impact, for on August 16, 1999, the plaintiffs filed a Motion for Substitution asking that Mr. Bell be substituted as the party plaintiff in his capacity as Administrator of his daughter's estate, with regard to all claims except the loss of consortium.

The American Legion filed a Response to the Motion to Substitute, arguing that the Motion was not timely, and that the proper beneficiary of the wrongful death suit should be the decedent's husband, rather than her parents. The defendant followed its Response by filing a Motion to Dismiss and/or for Judgment on the Pleadings.

The trial court granted the Motion for Substitution, but on October 4, 1999, it granted the American Legion's Motion for Judgment on the Pleadings, and dismissed the Complaint, stating that "the Complaint fails to state a claim for which the relief prayed for can be granted." The trial court granted the Bells' request for an interlocutory appeal of the order of dismissal, but we declined to grant the interlocutory appeal. After the trial court entered its final order in the proceedings against Mr. Nolan, the Bells filed a Notice of Appeal, signaling their intention to pursue an appeal as of right in this court.

### III. The Question of Finality

As a threshold matter, the American Legion contends that the judgment appealed from is not a final judgment under Rule 3 Tenn. R. App. P., because it does not conclude all the "claims, rights and liabilities of all parties" to the suit.

They argue that the Plaintiff's Motion to Alter or Amend the Judgment against Mr. Nolan or in the Alternative for a New Trial was in substance a Motion for an Additur. The additur statute, Tenn. Code. Ann. § 20-10-101, allows a trial court to suggest an additur "in such amount or amounts as he deems proper to the compensatory or punitive damages awarded by the jury, or both classes of damages." However, the additur statute requires that the suggestion of an additur be accepted by the defendant. If it is not accepted, "the trial judge shall grant the plaintiff's motion for new trial because of the inadequacy of the verdict upon proper motion being made by the plaintiff."

The appellee contends that the trial court exceeded its powers by ordering an additur without the assent of Mr. Nolan, and that in the absence of such assent, the court's action must be construed as the grant of the Motion for New Trial. See *Evans v. Wilson*, 776 S.W.2d 939 (Tenn. 1989). The conclusion the appellee wishes us to draw, of course, is that the pendency of a new trial clearly indicates that the final judgment in this case has not yet been entered, rendering it unripe for appeal.

It appears to us, however, that the trial judge did not suggest an additur. He simply entered an order increasing the amount of the judgment against Mr. Nolan. While the procedure may have been erroneous, the only person with the right to object to the judgment would have been Mr. Nolan himself. The American Legion did not participate in the trial, is not bound by the judgment against Mr. Nolan, and has no standing to object to it. If upon remand, the Legion is found liable to the plaintiffs, then it will be entitled to a trial on damages, where it can put on its own proof as to the pecuniary value of the life of the deceased. Mr. Nolan made no objection to the judgment; in fact, he did not respond to it in any way. The trial court's judgment has therefore become final, and the case is ripe for appeal.

## IV. The Motion for Substitution

Another issue raised in this appeal involved the Motion for Substitution filed by the appellants. Apparently, the Bells were afraid that the American Legion would prevail on the question of whether they had the right to sue under Tenn. Code. Ann. § 20-5-106, and they filed their Motion to Substitute Mr. Bell as plaintiff, in his capacity as administrator of his daughter's estate. Tenn. Code. Ann. § 20-5-107 provides as follows:

> **Prosecution of action by representative or surviving spouse or next of kin.--** (a) The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin...

The American Legion argued that the Motion for Substitution was untimely, as it was filed three years after the Complaint. It appears to us, however, that the decision to grant the Motion was in the sound discretion of the trial court. See *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. Ct. App. 1980). Both this court and the Supreme Court have held that substitution of plaintiffs is liberally allowed in wrongful death cases, even after the statute of limitations has passed, because it does not prejudice the defendant, who has had notice from the beginning of the suit of the nature of the action being brought against him. See *Matthews v. Mitchell*, 705 S.W.2d 657 (Tenn. Ct. App. 1985), *Chapman v. King*, 572 S.W.2d 925 (Tenn. 1978). We do not believe the trial court abused its discretion in this case by granting the plaintiffs' motion.

## V. A Wrongful Death Claim

We arrive at the critical question on appeal: whether, in light of the provisions of the Wrongful Death statutes and the cases interpreting those statutes, the plaintiffs are the proper parties to bring this suit. The Wrongful Death statutes clearly contemplate that the right to bring an action lies first with the spouse of the deceased. Tenn. Code. Ann. § 20-5-106 reads in pertinent part,

> (a) The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the

wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin ...

The appellee argues that Richard Nolan, as the surviving spouse of Beverly Joan Bell Nolan is the only party entitled to sue for her wrongful death. Since the appellee also contends that Mr. Nolan is solely responsible for his wife's death, it concedes that any suit he files would place him in the position of both plaintiff and defendant, an absurdity on its face. The appellee thus endorses the position that there can be no civil remedy for the acts that led to Ms. Nolan's death.

The appellants contend, however, that the statute has not eliminated the possibility of a remedy, because the right to sue devolved upon them when Mr. Nolan waived his own right through inaction. In *Foster v. Jeffers*, 813 S.W. 2d 449 (Tenn. App. 1991), a woman was shot to death by her husband's brother (who was also his business partner). The husband declined to sue his brother for her death, and two nephews of the wife brought suit as next-of-kin. The trial court dismissed their suit for lack of standing, but this court reversed, holding that by declining to sue, the husband had impliedly waived his rights under Tenn. Code. Ann. § 20-5-106 (including the right to receive the proceeds of a successful suit) thus conferring those rights upon the nephews.

The appellee argues that the effect of this court's holding in *Foster v. Jeffers* should be confined to its own "bizarre facts" (as we characterized them). The appellee notes that no subsequent case of this court or the Supreme Court has adopted the "implied waiver" theory, and cites two cases decided after *Jeffers,* where despite a husband's involvement in the death of his wife the court declined to invoke the theory.

Neither of these cases is on point, however, because they both turned on the proper interpretation of the forfeiture statute, Tenn. Code. Ann. § 31-1-106, which is not part of the appellant's argument in the present case. That statute reads in pertinent part

Any person who shall kill, or conspire with another to kill, or procure to be killed, any other person from which the first named person would inherit the property, either real or personal, or any part thereof, belonging to such deceased person at the time of his death, or who would take the property, or any part thereof, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right therein, and the same shall go as it would have gone under the provisions of § 31-2-104, or by will, deed or other conveyance, as the case may be, provided, that this section shall not apply to any such killing as may be done by accident or in self-defense.

-6-

We shall briefly discuss the two cases cited by appellee.[1]

*House v. Gibson*, 827 S.W.2d 310 (Tenn. App. 1991) was a wrongful death case. The mother of the decedent sued, alleging that the decedent's husband intentionally killed her, while the husband claimed that it was an accident. We ruled that the mother's Complaint could survive the defendant's Motion for Summary Judgment, because its allegation of intent to kill satisfied the requirements of Tenn. Code. Ann. § 31-1-106.

Appellee notes that in the present case the appellants' Complaint alleges only that Mr. Nolan intentionally struck his wife, and that she died as a result of the blow. Appellee argues that since the Bells' Complaint does not specifically allege that Mr. Nolan intended to kill his wife, it does not meet the threshold requirements of Tenn. Code. Ann. § 31-1-106. However, even if we agree with the appellee that the forfeiture statute would not bar Mr. Nolan from bringing suit under the wrongful death statute, this argument is beside the point, for as we stated above, that is not the question before us; the question is whether his failure to sue clears the way for a suit by the parents of the deceased. We believe that it does.

*Moore v. State Farm Insurance Company,* 878 S.W.2d 946 (Tenn. 1994) did not even involve a claim under the wrongful death statutes, but rather the question of who was the proper beneficiary of an insurance policy. The Supreme Court ruled that the husband, whose reckless driving caused the accident that led to his wife's death, did not forfeit his right to receive the insurance proceeds from the accident, even though he pleaded guilty to vehicular homicide. The court reasoned that his plea did not satisfy the element of intent required to trigger the provisions of Tenn. Code. Ann. § 31-1-106.

Appellee reasons by analogy that if conviction of a felony did not deprive Mr. Moore of his rights, the grand jury's refusal to indict Mr. Nolan should place his rights in an unassailable position. But unlike Mr. Moore, who was attempting to assert his rights, Mr. Nolan relinquished his, so their situations are not really comparable.

The American Legion also contends that from a public policy standpoint it would be unwise to accept the implied waiver argument, except for cases involving intentional homicide. They argue that "there might be innumerable good reasons why a partially at fault spouse would not want to pursue a cause of action" and that "to open up this possibility to innumerable collateral kin is irrational." We do not agree with that analysis. By ruling that a spouse can waive his right of action to the next of kin of the deceased, we do not thereby imply that by inaction, the next of kin can devolve his right to a still more remote relative.

---

[1] A third case cited by appellee, *Miller v. Niblack*, 942 S.W.2d 533 (Tenn. App. 1996) contains some dicta that arguably support its position. However, *Miller* does not involve a wrongful death, but rather the question of who has the right to bring a paternity action where the putative father is deceased.

Further, in *Foster v. Jeffers*, supra, we observed that the wrongful death statutes provide several ways whereby a surviving spouse can maintain control over his right of action if he wishes.

> "He could bring the wrongful death action himself, he could waive his right to the administrator who could bring the action on his behalf, or he could effect a bona fide compromise in the form of a release and simply not bring the action to trial. It is clearly the legislative intent that a surviving spouse ought to be able affirmatively to maintain control over his right of action regardless of whether he intends to bring the action to trial. Because the statutes provide several means by which a spouse may retain his right of action, we find that a spouse can waive his right by inaction."

813 S.W.2d at 453

While none of these options may have been practical or palatable for Mr. Nolan, they do provide a measure of protection for the individual whose spouse has died under circumstances that would support a wrongful death suit, but who has legitimate objections to the institution of such a suit.

## VI.

The judgment of the trial court dismissing the American Legion is reversed. Remand this cause to the Circuit Court of Coffee County for further proceedings consistent with this opinion. Tax the costs on appeal to the Appellee, Memorial 39, Post #43, the American Legion.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.