**John W. MOORE, Guardian and Next Friend of Joshua Ulrich and Patrick Ulrich, Minor Beneficiaries, and as Administrator of the Estate of Lisa Viola Jordan, Deceased, and The Unknown Beneficiaries of Lisa Viola Jordan, Plaintiff–Appellee,**

**v.**

**STATE FARM LIFE INSURANCE COMPANY and Jack Lindsey Jordan, Defendants–Appellants.**

Supreme Court of Tennessee, at Jackson.

June 13, 1994.

Kevin G. Patterson, Memphis, Christopher L. Nearn, Hester & McCrary, Bartlett, for plaintiff-appellee.

J. Kimbrough Johnson, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, for defendants-appellants.

## OPINION

REID, Chief Justice.

This case presents for review summary judgment, affirmed by the Court of Appeals, that the husband, who was the primary beneficiary under a policy of insurance on the life of his wife, is barred by T.C.A. § 31–1–106 (1984) from receiving the proceeds of the policy because he was convicted, on a plea of guilty, of vehicular homicide for his wife's death. This Court finds that because the proof does not show that the husband intended to kill the insured, his right to the proceeds was not forfeited.

State Farm Life Insurance Company issued certain policies of life insurance in which Lisa Viola Jordan was the named insured, Jack Lindsey Jordan was the primary beneficiary and Mrs. Jordan's two minor children by a previous marriage were the secondary beneficiaries. Mrs. Jordan died as the result of injuries sustained in an automobile wreck caused by Mr. Jordan's losing control of the vehicle in which she was a passenger. State Farm paid the proceeds of

the policies to Mr. Jordan, as primary beneficiary.

Jordan was charged with vehicular homicide pursuant to T.C.A. § 39–13–213(a) (1991). The two-count indictment charged Jordan with the "reckless killing of another by the operation of an automobile," (1) "[a]s the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person," and (2) "[a]s the proximate result of the driver's intoxication as set forth in § 55–10–401." T.C.A. § 39–13–213(a). Mr. Jordan pled guilty to the charge of vehicular homicide but not specifically to either count.

The plaintiff, as guardian of the decedent's minor children, filed suit against Jordan and State Farm claiming that T.C.A. § 31–1–106 effected a forfeiture of Jordan's right to the insurance proceeds, and that they, as secondary beneficiaries, are entitled to recover the amount of the proceeds from Jordan and/or State Farm. Plaintiff, Jordan, and State Farm filed motions for summary judgment. The proof filed in support of the motions consisted of a copy of Jordan's guilty plea and his affidavit, in which he acknowledged the date and place of the wreck and the death of his wife, but stated that he did not intend to lose control of the vehicle, he did not intend to injure or kill his wife, and the wreck was an accident. The trial court awarded summary judgment for the plaintiff, which concluded the case in the trial court. The Court of Appeals affirmed. The case is before this Court on State Farm's appeal.

The Court of Appeals found the death of the insured was not the result of an "accident" within the meaning of T.C.A. § 31–1–106. The court stated the determinative issue to be:

whether the reckless killing of another by operation of an automobile in a manner which creates a substantial risk of death to another or whether the reckless killing of another which is the proximate result of the driver's intoxication is an accident.

That court, after examining the definitions of "intentional," "knowing," "reckless," and "criminal negligence" in the Criminal Code, T.C.A. § 39–11–302 (1991), concluded:

Under the proof in this record, Mr. Jordan intentionally drank the intoxicating beverages and drove his vehicle. . . .

As we heretofore noted, this Court in *Draper v. Draper* [1987 WL 9667], [an unreported Court of Appeals decision], defined "accident" as an event occurring without intent or volition through careless unawareness, ignorance or a combination of causes producing an unfortunate result. Under T.C.A. § 39–11–302(c) a person acts recklessly when he "is aware of, but *consciously* disregards a substantial and unjustifiable risk." (Emphasis supplied.) Mr. Jordan's knowledge of the risk and the complete disregard thereof takes his action out of the realm of accident according to the definition of accident approved in *Draper.*

Relying upon the Criminal Code definition of "reckless," the Court of Appeals found that the forfeiture statute applies to a situation in which death is caused by a person who "consciously disregards a substantial and unjustifiable risk."

T.C.A. § 31–1–106 provides:

Any person who shall kill, or conspire with another to kill, or procure to be killed, any other person from which the first named person would inherit the property, either real or personal, or any part thereof, belonging to such deceased person at the time of his death, or who would take the property, or any part thereof, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right therein, and the same shall go as it would have gone under the provisions of § 31–2–104, or by will, deed or other conveyance, as the case may be, provided, that this section shall not apply to any such killing as may be done by accident or in self-defense.

■ The Court of Appeals focused on whether Jordan's losing control of the automobile was an "accident"; however, the real issue is whether a person who causes the death of another by conduct penalized under T.C.A. § 39–13–213 is considered to have killed that person within the meaning of T.C.A. § 31–1–106. This Court concludes that the language and purpose of the statute requires that a beneficiary must have intend-

ed to kill the insured before the beneficiary is barred from taking the proceeds of the policy.

The language of the statute supports the intent requirement. Under the statute, a person is barred from taking the property from another if he "shall *kill*, or *conspire* with another to kill, or *procure* to be killed" the person from whom he would take such property. The statute further provides that the bar "shall not apply to any such killing which may be done by *accident*...." Thus the legislature has grouped "kill," "conspire," and "procure" as actions which will work a forfeiture, and then has contrasted and distinguished this grouping from killings which result from "accident." One who conspires to kill another person or procures the killing of a person necessarily intends that the other person will die. Because "kill" is on the same level as "conspire" and "procure," the statute logically requires the same intent for the three methods of accomplishing death.

The requirement of intent, rather than a certain degree of criminal culpability, is supportive of the purpose of the statute, which is to remove the temptation to kill for monetary gain. *See Houser v. Haven*, 32 Tenn.App. 670, 225 S.W.2d 559 (1949) (wife who shot insured three to five times not allowed to receive proceeds; court notes the "sound public policy of protecting human life by removing the temptation to kill for financial advantage"). The statute is declaratory of the common law maxim that "a wrongdoer will not be allowed to benefit from his crime...." *See Hicks v. Boshears*, 846 S.W.2d 812, 813, 814 (Tenn.1993). As *Couch on Insurance 2d* explains:

> The rule that a beneficiary is barred from receiving the proceeds of insurance when he has feloniously caused the death of the insured is not applied when the beneficiary did not intend to kill the insured, as when he ... killed him in the commission of an unlawful act without intending to do so....
>
> ....
>
> ... Since the rationale of the rule is that the beneficiary is not to be permitted to profit by his own wrong it would seem that whenever he has intended to cause death

he should be barred. Thus, it has been stated that unlawful intentional causation of death, whether felonious or not, is the test. The logic of predicating the rule solely on intent is confirmed by consideration of the fact that the criterion of a felony is the punishment to which the defendant may be subjected rather than the nature of his act. It would be absurd to state a rule inspired by concepts of morality in terms of the punishment which was imposed upon the act, particularly when punishment varies so greatly from state to state, whereas an intent to kill is a factual element which is a constant value.

4 George J. Couch et al., *Couch on Insurance 2d* § 27:154, (rev. vol. 1984).

Prior decisions of the Court of Appeals are helpful in determining the proof necessary to accomplish a forfeiture.

In *Jamison v. Metropolitan Life Ins. Co.*, 24 Tenn.App. 398, 145 S.W.2d 553 (1940), the wife killed her husband who was with another woman by shooting him six times through a door. The issue, as stated by the court, was "where one kills another in a manner other than by accident or in self-defense, he will forfeit all rights to insurance." *Id.*, 145 S.W.2d at 557. The jury found that the wife did not "feloniously, wrongfully, and unlawfully" kill her husband, accepting her defense that she did not know that he was behind the door when she shot, and she did not mean to kill him. However, the Court of Appeals found that her statement that she did not intend to kill him was so improbable and unreasonable that it had no weight as evidence, because she was conclusively presumed to have intended the natural consequences of her voluntary act. Finding that the evidence established intent within the meaning of the statute, the court stated:

> If one presents a pistol to another's head and pulls the trigger and death results, or where one shoots into a room crowded with people and kills somebody, he is conclusively presumed to have intended to kill him. Hence the defense of accident is not available, and this assignment must be sustained.

*Id.* at 557.

Applying the reasoning of the court in *Jamison* to the use of an automobile, one

who drives a speeding car directly against a pedestrian or onto a crowded sidewalk will be found to have intended to kill if death in fact results. The facts of the case before the Court are not comparable. The Court of Appeals found that driving while intoxicated "made it *reasonably probable* that a traumatic event *might* occur." (Emphasis added.)

In *Conner v. Holbert,* 49 Tenn.App. 319, 354 S.W.2d 809 (1961), a case involving land rather than insurance, the forfeiture was affirmed. The court stated:

It is next insisted that the statute, T.C.A. § 31–109, does not apply where the homicide is of a degree less than murder and that the right to take the property of the decedent can not be defeated where the offense is only voluntary manslaughter as in this case. We cannot agree. The statute applies if the killing is felonious or *otherwise* than by accident or necessary self defense.

*Id.,* 354 S.W.2d at 813 (emphasis added).

The issue is perhaps best analyzed in *Minasian v. Aetna Life Ins. Co.,* 295 Mass. 1, 3 N.E.2d 17 (1936), in which the court allowed a husband, who had "unintentionally" shot his wife and pled guilty to manslaughter, to recover the proceeds of a life insurance policy on her life, stating:

The answer cannot be found by mere logical deduction from any general maxim or principle. If the maxim, that no man shall profit from his own wrong, be applied literally, then the slightest negligence of a beneficiary resulting in the death of the insured, would bar recovery. Such a result would be recognized generally as impractical and unjust. If that maxim be applied to all criminal wrongs, then a beneficiary who drives an automobile in which the insured is killed in a collision is often in danger of losing his rights, for the most common violations of the law of the road are misdemeanors. If forfeiture be the rule for all felonies, though not for misdemeanors, then every one who unintentionally causes death through reckless conduct loses his rights, for his act is manslaughter, and manslaughter is a felony. If an insured and his beneficiary, possibly father and son, should engage in a foolhardy test of speed in an automobile driven by the latter, and the former should be killed by a collision, it would seem hard to penalize the beneficiary for the unintended result, not only by punishment for manslaughter, but also by loss of the insurance, and possibly still further by loss of all right to inherit. . . . Even if forfeiture be limited to cases on intentional injury, but be made to apply to every intentional injury which happens unexpectedly to cause death, cases of hardship are likely to arise. Every unjustified battery that results in death is at least a manslaughter. If one brother, in a boyish quarrel, should give another a slight blow or push, and death should unexpectedly result, a forfeiture of insurance or of inheritance would be a consequence undesired by the deceased and shocking to the community.

A majority of the court are of opinion that the rule ... does not apply to a manslaughter where there was no intentional injury of a kind likely to cause death.

*Minasian,* 3 N.E.2d at 18–19 (citations omitted).

The court in *Hatcher v. Aetna Life Ins. Co.,* 105 F.Supp. 808, 811 (D.Or.1952), reached a similar result:

Would the Oregon courts hold that a son whose reckless driving caused his parents' death, could not inherit from the parents? I think not. Would the Oregon courts hold that a wife, whose negligent driving of the family automobile caused her husband's death, forfeited her claim as beneficiary under her husband's life insurance policies? I feel sure they would not rule that way.

I hold, then, that plaintiff's homicide of her husband, though wrongful, and a felony under the Oregon Criminal Code, did not constitute "felonious taking" of her husband's life, within the meaning of the Disinheritance and Forfeiture statute.

■ The proof in the case before the Court does not show that Jordan intended to kill his wife. Instead, it shows, for the purposes of summary judgment, that he did not intend to kill his wife. The result is that the judgments of the Court of Appeals and the

trial court are reversed, and summary judgment is entered for State Farm. The case is remanded to the trial court.

Costs are assessed against the plaintiff.

DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

(DAUGHTREY, J., not participating).