# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 9, 2002 Session

## DEBRA DENECE BOLIN v. CARL DEAN BOLIN

**Direct Appeal from the Chancery Court for Montgomery County**
**No. 99-08-0035    Carol Catalano, Chancellor**

---

**No. M2001-02168-COA-R3-CV - Filed August 13, 2002**

---

Wife filed for divorce soon after Husband was sentenced to four years in prison for causing the death of Son. The trial court granted Wife the divorce on the grounds of inappropriate marital conduct. The court also determined that section 31-1-106 of the Tennessee Code prohibited Husband from collecting his portion of Son's life insurance policy. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Carrie Kersh-Gasaway, Clarksville, Tennessee, for the appellant, Carl Dean Bolin.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, Debra Denece Bolin.

## OPINION

Carl and Debra Bolin were married on October 20, 1973. Ms. Bolin worked throughout the marriage. Mr. Bolin worked irregularly until 1989, when he began to draw disability. Mr. Bolin also supplemented his income by gambling on pool tournaments. During the course of their marriage, the couple had two children, Chad and Cameron. At the time of the parties' separation, Cameron was twenty-two years old, Chad was deceased. This divorce, and the corresponding issues, stem from Chad's death.

In January 1998, Mr. Bolin and Chad returned home after playing in a pool tournament at a local bar. Chad had recently been discharged from the military and lived with Mr. and Ms. Bolin. Chad's girlfriend, Heather, and her two children also lived with the Bolins.

Soon after Mr. Bolin and Chad arrived at their house, Chad attacked Mr. Bolin. The reasons behind this attack are unclear. Ms. Bolin and Heather attempted to stop the fight. Due in part to their intervention, Chad ended his assault of Mr. Bolin.

When Mr. Bolin got off the floor, he retreated into the couple's bedroom. Mr. Bolin retrieved a loaded double barrel shotgun that he stored above the bed. Mr. Bolin testified that he told Ms. Bolin that he "was going [to] wrap it around [Chad's] head to keep him off of me . . . ." Mr. Bolin knew the gun was loaded, but maintained that he could not unload it because of an injury he sustained during the fight with Chad.

Mr. Bolin then followed Chad out of the house and into the back yard. The father and son had a brief discussion, and Mr. Bolin fired a shot into the ground. Mr. Bolin testified that he thought he emptied the gun by firing it. Chad then walked around the house to the front yard.

While still in possession of the shotgun, Mr. Bolin went back through the house and out the front door. When Mr. Bolin arrived on the front porch, he witnessed Chad exiting a truck. The truck belonged to Mr. Bolin, and Mr. Bolin usually kept a small gun in the vehicle. Chad walked to the street. Mr. Bolin followed on the sidewalk, beside a block wall adjacent to the driveway. At this point, Mr. Bolin testified that he told Chad to "do whatever you got to do" and "I'm going to put the gun [down]." Then, according to Mr. Bolin, "[i]n the process of putting [the gun] on the wall it discharged." The shotgun blast killed Chad.

In July of 1999, a jury found Mr. Bolin guilty of reckless homicide. The court sentenced Mr. Bolin to four years in the Department of Correction. This case is reported as *State v. Bolin*, No. M1999-00849-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 58 (Tenn. Crim. App. January 28, 2002).

Shortly after Mr. Bolin's conviction, Ms. Bolin filed for divorce. Ms. Bolin's complaint alleged that Mr. Bolin was guilty of inappropriate marital conduct and that irreconcilable differences existed between the parties. The trial court granted Ms. Bolin the divorce. In addition to awarding the divorce to Ms. Bolin, the court ruled that Mr. Bolin could not benefit from Chad's life insurance policy. Mr. Bolin appeals the court's decision. The issues, as stated by Mr. Bolin, are as follows:

I.   The trial court erred by granting the plaintiff a divorce based upon inappropriate marital conduct.

II.  The trial court erred in finding that the defendant is precluded from receiving life insurance proceeds from the death of the parties' adult son.

III. The trial court erred by dividing the marital property inequitably.

IV.  The trial court erred by denying the defendant's request for attorney's fees.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Mr. Bolin's first issue concerns the court's decision to award Ms. Bolin the divorce. Mr. Bolin contends that the evidence failed to establish that he was guilty of inappropriate marital conduct. Mr. Bolin argues that behavior toward the parties' adult child fails to justify a divorce on the grounds of inappropriate marital conduct. Mr. Bolin maintains that a divorce on those statutory grounds must involve treatment toward the spouse.

Grounds for divorce are governed by statute in Tennessee. *Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977). One particular ground for divorce is where "[t]he husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper which may also be referred to in [the] pleadings as inappropriate marital conduct . . . ." Tenn. Code Ann. § 36-4-101(11) (2001). Essentially, inappropriate marital conduct is where "either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'" *Earls v. Earls*, 42 S.W.3d 877, 892 (Tenn. Ct. App. 2000) (Cottrell, J., concurring) (citations omitted).

In this case, the record supports the trial court's decision to grant the divorce to Ms. Bolin on the grounds of inappropriate marital conduct. Mr. Bolin's actions in pursuing Chad with a firearm that ultimately caused Chad's death certainly caused Ms. Bolin pain, anguish, and distress. The court was also justified in concluding that Mr. Bolin's actions rendered cohabitation unsafe and improper. Although Mr. Bolin's actions were directed primarily at Chad, the trial court did not err in determining that his actions constituted cruel and inhuman treatment toward Ms. Bolin. One of the most cruel acts toward a parent would be the killing of his or her child. Accordingly, this issue is without merit.

In Mr. Bolin's next issue, he contends that the court erred when it determined that section 31-1-106 of the Tennessee Code prohibited him from receiving any portion of Chad's life insurance benefits. In arriving at its ruling, the court found that Mr. Bolin's actions were not consistent with one who acts in self-defense. The court also found that Chad's death was not an accident. The court concluded that Mr. Bolin "intentionally shot and killed Chad Bolin and is barred from receiving any life insurance funds or proceeds pursuant to Tenn. Code Ann. sec. 31-1-106."

Section 31-1-106 of the Tennessee Code states:

Any person who shall kill, or conspire with another to kill, or procure to be killed, any other person from which the first named person would inherit the property, either

real or personal, or any part thereof, belonging to such deceased person at the time of the deceased person's death, or who would take the property, or any part thereof, by will, deed or otherwise, at the death of the deceased, shall forfeit all right therein, and the same shall go as it would have gone under the provisions of § 31-2-104, or by will, deed or other conveyance, as the case may be, provided, that this section shall not apply to any such killing as may be done by accident or in self-defense.

Tenn. Code Ann. § 31-1-106 (2001).

The Tennessee Supreme Court interpreted this statute in ***Moore v. State Farm Life Insurance Co.***, 878 S.W.2d 946 (Tenn. 1994). In ***Moore***, Mr. Jordan was the driver of a vehicle in which Ms. Jordan was a passenger. ***Id.*** Mr. Jordan lost control of the vehicle, causing the death of Ms. Jordan. ***Id.*** Mr. Jordan was the primary beneficiary of her insurance policy; her two children by a prior marriage were the secondary beneficiaries. ***Id.*** State Farm paid the proceeds of the policies to Mr. Jordan. ***Id.*** at 946-47.

Mr. Jordan pled guilty to vehicular homicide. ***Id.*** at 947. Subsequently, the guardian of the minor children sued State Farm and Mr. Jordan. ***Id.*** The guardian argued that Mr. Jordan forfeited his right to the insurance proceeds pursuant to section 31-1-106 of the Tennessee Code and that the children, as secondary beneficiaries, were entitled to the proceeds instead. ***Id.***

After analyzing the statute and several cases, the court determined that "a beneficiary must have intended to kill the insured before the beneficiary is barred from taking the proceeds of the policy." ***Id.*** at 947-48. The court stated that this interpretation supported the purpose of the statute, which is to eliminate the temptation to kill for financial gain. ***Id.*** at 948. The court also provided an example of the proof necessary to accomplish a forfeiture in the automobile context. ***Id.*** at 948-49. The court stated that "one who drives a speeding car directly against a pedestrian or onto a crowded sidewalk will be found to have intended to kill if death in fact results." ***Id.***

In this case, the evidence does not preponderate against the trial court's finding that Mr. Bolin intentionally killed Chad. The court found that Mr. Bolin liked to portray a "tough-guy image that showed he was not beyond acts of violence." The court also found that although Chad instigated the fight, Mr. Bolin was the first to get a weapon. Further, the court found it important that Mr. Bolin pursued Chad with the gun, and the record establishes that Mr. Bolin was in possession of the gun when it discharged. Finally, the court found that Mr. Bolin was aware of the danger of firearms. This finding is also supported by the record.

The court determined that Chad's death was not accidental, due in part to Mr. Bolin's actions after he shot Chad. Mr. Bolin did not seek help or try to render first aid to Chad. The court concluded that "[n]ormally, any person who accidentally injured another would try to help that injured person, especially their own child." Finally, the court determined that Mr. Bolin's story was not credible, and stated that Mr. Bolin knew that he was carrying a loaded shotgun when he pursued Chad to the front of the house.

The evidence also fails to preponderate against the trial court's finding that Mr. Bolin did not act in self-defense. Chad was unarmed at the time of his death and was standing at least twenty feet from Mr. Bolin. Although Chad broke into Mr. Bolin's truck and stated "I'm going to make it even," there is no evidence that Chad knew Mr. Bolin carried a gun in the truck. Finally, the court found that Chad was leaving the Bolin's property, and the evidence supports this conclusion.

Finally, Mr. Bolin made several statements that support the trial court's conclusion. When he shot Chad, Mr. Bolin told Ms. Bolin, "now you can call the law. I've shot him." Also, after the 911 operator called the Bolin's home, Mr. Bolin answered the phone. The operator asked if Chad was dead, and Mr. Bolin replied, "I don't know. I left him laying in the street."

The evidence supports the trial court's finding of intent as required by *Moore*. Additionally, the evidence supports the trial court's finding that the shooting was not in self-defense and was not an accident. Accordingly, we affirm the decision of the trial court. Mr. Bolin is not entitled to any portion of the insurance proceeds that resulted from Chad's death.

Mr. Bolin's next issue concerns the trial court's division of the parties' marital property. In dividing the Bolin's marital property, the court awarded Mr. Bolin nine vehicles, two motorcycles, and a trailer. The court also awarded Mr. Bolin a living room suite, the parties' bedroom suite, a pool table, a riding lawn mower, and an air compressor.

The court awarded Ms. Bolin three vehicles, a motorcycle, a camper and a trailer. Ms. Bolin also received the remaining household items. The court awarded the house to Ms. Bolin, in addition to the $4,000 of equity therein. The court further determined that Ms. Bolin was responsible for the remaining mortgage on the house. Finally, the court held Ms. Bolin responsible for the credit card debts and for Chad's funeral expenses.

Mr. Bolin argues that the trial court erred in refusing to order Ms. Bolin to sell the marital home. In the alternative, Mr. Bolin argues that the court should have ordered Ms. Bolin to pay him one half of the equity in the residence. Further, Mr. Bolin contends that Ms. Bolin should have been required to refinance the house in her name only.[1]

Tennessee statutes only allow for the division of marital property upon the dissolution of a marriage; therefore, it is of primary importance for the trial court to classify property as separate or marital. Tenn. Code Ann. § 36-4-121(a)(2001); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). After the court determines the extent of the parties' marital property, the court must divide the marital property equitably. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001). The trial court's division of the marital estate need not be equal to be equitable. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Generally, the fairness of the property division is judged upon its final results. *Id.*

---

[1] Mr. Bolin does not argue that the proceeds from Chad's life insurance policy are marital property. Accordingly, we have not addressed that matter.

The trial court's equitable division of the parties' marital property is guided by the statutory factors set out in section 36-4-121(c) of the Tennessee Code. *Manis*, 49 S.W.3d at 306. The trial court's equitable division of the marital property carries great weight before this Court. *Id.* Accordingly, we will typically defer to the trial court's decision unless it is contrary to the preponderance of the evidence or is inconsistent with the statutory factors. *Id.*

After a thorough review of the record in light of the statutory factors listed in section 36-4-121(c) of the Tennessee Code, we do not find that the evidence preponderates against the trial court's distribution of the parties' marital property. In reviewing Ms. Bolin's listing of the parties' assets, it is evident that the parties did not have a great deal of marital property. However, Mr. Bolin received a sizeable portion of the parties' property. Further, the court ordered Ms. Bolin to pay the parties' debt, as well as Chad's funeral expenses. Accordingly, we affirm the trial court's equitable distribution of the parties' marital property.

In Mr. Bolin's final issue, he contends that the trial court erred by denying his request for attorney's fees. Although Mr. Bolin asked for attorney's fees in his counterclaim, his testimony does not support his request. Mr. Bolin's testimony on direct examination provides the following exchange:

Q. And are you asking that your wife pay your attorney's fees?

A. Well, no.

. . . .

Q. If your wife has the funds to pay your attorney's fees, you don't want her to pay them?

. . . .

A. Where would she have the funds?

Q. I'm just saying if she did have the funds.

A. Would I want her to pay for it?

Q. Right.

A. No, It's my debt.

From this testimony, it is evident that Mr. Bolin did not want Ms. Bolin to pay his attorney's fees. Accordingly, the trial court did not err when it failed to award Mr. Bolin his attorney's fees.

We affirm the decision of the trial court.  The costs of this appeal are taxed to the appellant, Mr. Carl Bolin, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE