*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

        *v.*

HIGH TECHNOLOGY PRODUCTS, INC., a Michigan corporation; HOROS, INCORPORATED, a Liberian corporation; THE GOVERNMENT OF CANADA,

        *Defendants,*

THE GOVERNMENT OF THE RUSSIAN FEDERATION,

        *Defendant-Appellant.*

No. 06-1188

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-72365—Avern Cohn, District Judge.

Argued: June 1, 2007

Decided and Filed: August 8, 2007

Before: MOORE and GRIFFIN, Circuit Judges; McKINLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** Brian P. Flaherty, WOLF, BLOCK, SCHORR & SOLIS-COHEN, Philadelphia, Pennsylvania, for Appellant. Carolyn Bell Harbin, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Brian P. Flaherty, WOLF, BLOCK, SCHORR & SOLIS-COHEN, Philadelphia, Pennsylvania, for Appellant. Carolyn Bell Harbin, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

    KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant the Government of the Russian Federation ("Russia") appeals from the district court's order absolving Plaintiff-Appellee the United States of America ("United States") of all potential liability with respect to certain isotopes. After taking custody of the isotopes, the United States filed an interpleader action to

---

    [*] The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1

determine possessory and ownership rights to the property. Through a series of settlements and court orders, the parties in interest—Defendant-Appellant Russia, Defendant the Government of Canada ("Canada"), Defendant High Technology Products, Inc. ("High Technology"), and Defendant Horos, Inc. ("Horos")—resolved their competing claims to the isotopes. Over Russia's objection, however, one of the district court's orders memorializing the resolution of the claims to the isotopes released the United States of any liability with respect to the isotopes. Although the United States was entitled as a matter of course in the interpleader action to be discharged of all liability related to the distribution of the isotopes, because the United States was not similarly entitled to be discharged of all other liability related to the isotopes, including damage to the isotopes while in the custody of the United States, we **VACATE** the order of the district court and **REMAND** for further proceedings.

## I. BACKGROUND

In June 1994, the Royal Canadian Mounted Police received a request from the Russian government for help locating certain non-radioactive isotopes that allegedly had been stolen from Russia and that were believed to have been transported to Canada. A joint Canadian and Russian investigation revealed that a large number of the isotopes had been shipped from Canada to High Technology Products, Inc., in Southgate, Michigan. Acting on this information, the U.S. Customs Service obtained a search warrant and, on February 4, 1995, seized and took custody of the isotopes from High Technology.

On June 12, 1995, the United States, facing conflicting claims of entitlement to the isotopes, filed an interpleader action pursuant to Federal Rule of Civil Procedure 22 in the federal district court, naming as defendants High Technology, Russia, and Canada. High Technology claimed that Horos, Inc., a Liberian corporation, lawfully purchased the isotopes from Russia and that, at the time of the seizure, High Technology was in lawful possession of the isotopes as a consignee of Horos. Russia claimed that Horos bribed a Russian official in order to buy the isotopes, that the sale was therefore invalid, and that Russia was entitled to possession of the isotopes. Canada claimed that it was pursuing criminal charges against Alexander Rodionov ("Rodionov"), the owner of Horos and an officer of High Technology, and that Canada was entitled to possession of the isotopes for use in the criminal investigation and as evidence in future court proceedings. The United States disclaimed any interest in possession of the isotopes and requested to "be forever released from any and all liability in connection with the isotopes." Joint Appendix ("J.A.") at 19 (Compl. at 4).

The suit progressed by fits and starts over the next ten years. Pursuant to an order entered July 5, 1995, the isotopes remained in the possession of the U.S. Customs Service while the suit was pending. Eventually, Canada agreed that its interests could be secured by obtaining a sample of the isotopes, and Russia, High Technology, Horos, and Rodionov agreed to have the remaining isotopes sold by two designated special masters, with sixty-five percent of the net proceeds to go to Russia and thirty-five percent to High Technology, Horos, and Rodionov. On March 28, 2005, the district court approved the settlement between Russia, High Technology, Horos, and Rodionov, subject to final resolution of Canada's claims. The district court appointed a special master to issue a report and recommendation regarding sampling of the isotopes to satisfy Canada's interests.

On October 20, 2005, the special master issued a report and recommendation setting forth ten sample vials of isotopes to be retained by the U.S. Customs Service on behalf of Canada and attached a proposed order memorializing the settlement between Russia, High Technology, Horos, and Rodionov as well as the recommendation regarding the ten sample vials. Notably, the special master's proposed order stated that, upon delivery of the isotopes for sale, "the United States shall be fully released and discharged of any liability *thereafter accruing* with respect to the Isotopes so delivered." District Court Record Entry 112, Ex. A (Proposed Order at 4) (emphasis added). Soon after, at the district court's request, the special master drafted a second proposed order requiring that

the ten sample vials be delivered to Canada and stating that, upon delivery of the isotopes for sale and upon delivery of the sample isotopes, the United States "shall be fully released and discharged of any liability with respect to the Isotopes so delivered, except for liability arising out of acts or omissions . . . that are inconsistent with the provisions of this Order." J.A. at 178, 179 (Dist. Ct. 11/22/05 Order at 4, 5).

On November 21, 2005, the district court held a hearing regarding the special master's report and recommendation. Russia objected to the second proposed order's deletion of the phrase "thereafter accruing" and the implicit release of the United States from all potential liability with respect to the isotopes. The district court interrupted Russia's counsel when the objection was raised, stating: "No way, no way. I don't care whether there is a problem with the isotopes or not. They are done. Once I sign this, they are out. If there is a problem with the isotopes, it's your problem, not the agency's or the government's, period." J.A. at 278 (11/21/05 Hr'g at 4). The district court explained:

> Once I sign this, . . . that's the end of it as far as the United States of America is concerned, period, paragraph. If anything happened to those isotopes while in the custody of Customs, it's too bad. They are out. They never should have had them in the first place. The only reason they have kept them all of these years is because you guys were, excuse me, negotiating, contesting, being contentious.

J.A. at 278-79 (11/21/05 Hr'g at 4-5). The next day, November 22, 2005, the district court entered the second proposed order. Russia timely appealed.

## II. ANALYSIS

On appeal, Russia argues that it was denied a meaningful opportunity to be heard regarding the United States's request for declaratory relief from all potential liability with respect to the isotopes. The United States argues that an order discharging the stakeholder from liability is a normal part of an interpleader action and that the district court properly did so in this case.

Pursuant to Federal Rule of Civil Procedure 22, "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." FED. R. CIV. P. 22(1). Interpleader is an equitable proceeding that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."[1] 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1704 (3d ed. 2001) (footnote omitted); *see also Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006). An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. 7 WRIGHT, MILLER, & KANE, *supra*, at § 1714. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial. *Id.*

"When the court decides that interpleader is available"—typically, at the conclusion of the first stage—"it may issue an order discharging the stakeholder, if the stakeholder is disinterested,

---

[1] Interpleader may be invoked in the federal courts via Rule 22 or via the Interpleader Act, 28 U.S.C. § 1335. In this case, the United States in its complaint invoked interpleader via Rule 22, basing jurisdiction on 28 U.S.C. § 1345, but the general principles discussed in this section apply to both rule and statutory interpleader.

enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead . . . ."**2**  *Id.* (footnotes omitted).  It is clear, and the parties agree, that the district court had the authority to issue an order discharging the United States, a disinterested stakeholder in this action, from liability.  *See* 28 U.S.C. § 2361 (providing that, in a statutory interpleader action, the district court "may discharge the plaintiff from further liability"); Note, *The Independent Liability Rule as a Bar to Interpleader in the Federal Courts*, 65 YALE L.J. 715, 715 (1956) ("In the first of the two stages of interpleader the stakeholder . . . is discharged from further responsibility to the claimants.").  The question before us regards the permissible scope of such an order.  The United States argues, and the district court apparently agreed, that a court may, as a matter of course, discharge a stakeholder from all liability whatsoever with respect to the property that is the subject of an interpleader action.  Russia argues that it was denied a meaningful opportunity to be heard when the district court discharged the United States of liability for any damage that might have occurred while the isotopes were in U.S. custody.

As the language of Rule 22 makes clear, "[a] prerequisite for permitting interpleader is that two or more claimants must be 'adverse' to each other."  7 WRIGHT, MILLER, & KANE, *supra*, at § 1705 (footnote omitted); *see also* 28 U.S.C. § 1335(a)(1) (requiring, as a basis for invoking statutory interpleader, that "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation"); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 72 (1939) (noting that "there is a real controversy between the adverse claimants" in an interpleader action).  Accordingly, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund [or property]."  7 WRIGHT, MILLER, & KANE, *supra*, at § 1704 (footnote omitted).

Because Russia, Canada, and High Technology and Horos presented competing claims to ownership of the isotopes, the United States legitimately feared multiple vexation directed against a single set of identifiable properties.  Facing these competing claims, the United States wisely elected to file an interpleader action so that the court could authoritatively decide how the isotopes were to be distributed.  Because ownership of the isotopes was disputed, distribution of the isotopes was the issue to be decided in the interpleader action, and the United States was therefore entitled, as a matter of course as part of the interpleader action, to be discharged of all liability related to distribution of the isotopes.

The district court apparently went further, though, and discharged the United States "of *any* liability with respect to the Isotopes."  J.A. at 178, 179 (Dist. Ct. 11/22/05 Order at 4, 5) (emphasis added).  Because the United States could not fear "multiple vexation directed against a single fund" for any damage claims related to its custody of the isotopes, 7 WRIGHT, MILLER, & KANE, *supra*, at § 1704, the liability of the United States for any damage claims concerning its custody was not an issue that was automatically brought before the district court via the filing of the interpleader action.  *Cf. State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) ("[O]ur view of

---

**2** We note that, in a typical interpleader action, a disinterested stakeholder would deposit with the court the fund or property at issue and be discharged from further liability during the first stage of the action, before the court determined the relative possessory and ownership rights of the parties and distributed the fund or property. *See* 28 U.S.C. § 1335 (requiring, as a basis for invoking statutory interpleader, that the stakeholder deposit with the court the fund or property at issue or post a bond "in such amount and with such surety as the court or judge may deem proper"); Note, *The Independent Liability Rule as a Bar to Interpleader in the Federal Courts*, 65 YALE L.J. 715, 715 (1956) ("In the first of the two stages of interpleader the stakeholder deposits the property into court or posts a bond."). In this case, the United States did not deposit the isotopes with the district court but instead, pursuant to court order and with the consent of at least some of the claimants, retained custody of the isotopes throughout the proceeding, J.A. at 232-34 (Dist. Ct. 6/23/95 Order), and was discharged from further liability only at the conclusion of the suit, J.A. at 178, 179 (Dist. Ct. 11/22/05 Order at 4, 5).

interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'").

This does not end our inquiry, however. Under the liberal joinder provisions of the Federal Rules of Civil Procedure and in light of the purpose of interpleader in preventing the stakeholder from the vexation of multiple suits, any party to the interpleader action could have brought before the district court the issue of damage to the isotopes while in the custody of the United States. In *New York Life Insurance Co. v. Connecticut Development Authority*, 700 F.2d 91 (2d Cir. 1983), for example, the Second Circuit examined an interpleader action in which one claimant had instituted a state court action that, "in addition to claiming entitlement to the cash surrender value of the [insurance] policies"—the fund at issue in the interpleader action—"also purported to allege tort causes of action for consequential damages resulting from New York Life's interference with [the claimant's] economic business relationships." *Id.* at 96. The Second Circuit noted that "it would have been within the district court's power and discretion to adjudicate [the claimant's] claims for consequential damages arising out of New York Life's allegedly tortious withholding of the cash surrender value of the insurance policies, and thereafter to enjoin permanently [the claimant's] prosecution of such claims." *Id.* (citations omitted); *see also Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3, 6 (3d Cir. 1963) (describing "the nature and purpose of interpleader as a single comprehensive suit to adjudicate fully and finally all disputes arising out of claims to a fund"). Likewise, we conclude that the district court had the power to adjudicate, in conjunction with the interpleader action, any damage claims related to the isotopes that were brought before the district court by the parties.

The United States arguably brought before the district court the issue of damage claims. The United States, in its complaint, requested to "be forever released from any and all liability in connection with the isotopes." J.A. at 19 (Compl. at 4). Even if we were to conclude, however, that this statement was sufficient for the United States to request declaratory relief from liability for damage related to its custody of the isotopes, we would conclude that the district court erred by resolving this claim. Just as would be required before adjudicating any other claim for declaratory relief, the district court was required to first determine "'that there [was] a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.'" *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 526 (6th Cir. 2001) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Prior to Russia inspecting or taking possession of the isotopes, any damage claims related to the United States's custody of the isotopes were only possibilities and could not be said to be of sufficient immediacy and reality as to warrant declaratory relief.

Accordingly, on remand, the district court is instructed to modify its order discharging the United States of liability, consistent with this opinion. Any damage claims related to the United State's custody of the isotopes must be left to be resolved another day.[3]

## III. CONCLUSION

Although the United States was entitled as a matter of course in the interpleader action to be discharged of all liability related to the distribution of the isotopes, because the United States was not similarly entitled to be discharged of all other liability related to the isotopes, including damage to the isotopes while in the custody of the United States, we **VACATE** the November 22, 2005 order of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[3] We note that nothing in this opinion should be read to preclude the United States from raising any particular defenses to a damage claim, should such a claim be brought.