GERBER LIFE INSURANCE
CO., Plaintiff,

v.

Samantha WALLACE; Thomas Wallace; Bobby Nolan; Teresa Nolan; Sandi Wallace; Mattea L. Rolin, as administrator for the Estate of Deceased Dena McNabb; Randy Basham; Larry Johnson; C.G., minor, and C.N., minor, Defendants.

Case No. 1:11–cv–31.

United States District Court,
E.D. Tennessee,
at Chattanooga.

March 15, 2012.

John W. Reis, Cozen and O'Connor, Charlotte, NC, Kenan G. Loomis, Cozen O'Connor, Atlanta, GA, for Plaintiff.

Daniel J. Ripper, Luther, Anderson, PLLP, Tonya K. Cammon, Grant, Konvalinka & Harrison, PC, Chattanooga, TN, Mattea Lee Rolin, Law Office of Mattea Lee Rolin, Soddy Daisy, TN, for Defendants.

## MEMORANDUM AND ORDER

HARRY S. MATTICE, JR., District Judge.

This interpleader action presents a straightforward question borne of tragic

facts: Does Tennessee's "Slayer Statute," Tenn.Code Ann. § 31–1–106, bar insurance recovery by parents charged with criminally negligent homicide in connection with their child's death? The Court concludes that it does not, and it will therefore **GRANT** Defendant Samantha Wallace's Motion for Summary Judgment (Doc. 46).

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden either by pro-

ducing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; Fed.R.Civ.P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See also, White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir.2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## II. BACKGROUND

The parties do not dispute the relevant facts in this case. (*See* Docs. 50–53).

Defendants Samantha and Thomas Wallace are the parents of deceased minor C.W. (Doc. 49 at 2). Defendant Samantha Wallace ("Ms. Wallace") purchased three separate life insurance policies (collectively, "the Policies"), in which C.W. was

named as the insured. (*See* Doc. 1–1 at 6–20, 25–41; Doc. 1–2 at 1–19).

Policy number 16506416 ("the First Policy")—for which Ms. Wallace applied on January 8, 2008—provided a $15,000 benefit in the event of C.W.'s death.[1] (Doc. 1–1 at 2, 6–20). The application stated: "Unless otherwise requested, the parents of the Proposed Insureds shall be the beneficiaries." (Doc. 1–1 at 9). Ms. Wallace did not specify a beneficiary on the application, but it appears that Plaintiff listed Ms. Wallace and Thomas Wallace ("Mr. Wallace") as primary beneficiaries. (*Id.*). The First Policy provided that the beneficiary was designated in the application. (Doc. 1–1 at 6).

Policy number 40909278 ("the Second Policy")—for which Ms. Wallace applied on April 25, 2008—also provided a $15,000 death benefit. (Doc. 1–1 at 25–41). Like the First Policy application, the Second Policy application stated: "Unless otherwise requested, the parents of the Proposed Insureds shall be the beneficiaries." (Doc. 1–1 at 26). Ms. Wallace did not specify a beneficiary on the Second Policy application.[2] (*Id.*).

Policy number 21299007 ("the Third Policy")—for which Ms. Wallace applied on August 19, 2008—provided a $5,000 benefit in the event of C.W.'s death. (Doc. 1–1 at 43; Doc. 1–2 at 2–19). Like the other two applications, the Third Policy application stated: "Unless otherwise requested, the parents of the Proposed Insureds shall be the beneficiaries." (Doc. 1–2 at 4). Ms. Wallace again did not specify a beneficiary on the application. (*Id.*). The Third Policy provided that the beneficiary was designated in the application. (Doc. 1–2 at 5).

On July 12, 2010, C.W. died. (Doc. 1–2 at 21; Doc. 49). C.G., another minor child of Ms. Wallace, discovered a gun in Mr. and Ms. Wallace's bedroom and accidentally shot C.W. in the chest. (Doc. 1–2 at 21; Doc. 49). As a result, C.W. sustained fatal injuries. (Doc. 1–2 at 21, Doc. 49). According to Ms. Wallace's undisputed affidavit, she was not present when the shooting occurred, neither she nor Mr. Wallace were aware that C.G. had discovered the gun, and neither she nor Mr. Wallace engaged in any intentional conduct that led to C.W.'s death. (Doc. 49 at 2).

As a result of C.W.'s death, Mr. and Ms. Wallace were arrested and charged with criminally negligent homicide, per Tenn. Code Ann. § 39–13–212.[3] (*Id.*). No other charges were filed in connection with the shooting. (*Id.*). Those criminal proceed-

---

1. The policies in this case each provided for a three-month or six-month "preliminary term" beginning on application, during which the benefit was $2,000 (in the case of the First Policy) or $2,500 (in the case of the Second and Third Policies). (*See* Doc. 1–1 at 6–20, 25–41; Doc. 1–2 at 1–19). Once the preliminary terms expired, the benefits increased to $15,000 (in the case of the First and Second Policy) and $5,000 (in the case of the Third Policy). (*See* Doc. 1–1 at 6–20, 25–41; Doc. 1–2 at 1–19). The parties do not contest the policy amounts or that the funds deposited by Plaintiff represent the full amount of insurance proceeds plus interest (less the amount paid to Whitwell Memorial Funeral Home for C.W.'s funeral arrangements). (*See* Docs. 21, 22, 22–1, 29).

2. It appears that, during the process of redacting C.W.'s identifying information from the Second Policy, the parties may have also removed the language identifying the policy's beneficiary. (*See, e.g.,* Doc. 1–1 at 37). The application—in which Ms. Wallace did not identify any beneficiary—remains intact, and there is no question that, unless otherwise specified, the Second Policy's default beneficiary was the insured's parents. (*See* Doc. 1–1 at 23). Moreover, no party contests that C.W.'s parents were the intended beneficiaries of the Second Policy.

3. The parties' citation to Tenn.Code Ann. § 39–12–212 is incorrect. (*See, e.g.,* Doc. 1 at 6; Doc. 47 at 3). No such provision exists in the Tennessee Code.

ings remain pending in Tennessee state court.

On February 10, 2011, Plaintiff filed this Petition for Interpleader, invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1335. (Doc. 1). Plaintiff named as Defendants: Mr. and Ms. Wallace; C.G. and C.N., C.W.'s minor half-siblings; Bobby Nolan and Teresa Nolan, C.W's grandparents; Sandi Wallace, C.W.'s grandparent; Mattea L. Rolin, the administrator of the estate of Dena McNabb, C.W.'s grandparent; Randy Basham, C.W.'s grandparent; Larry Johnson, C.W.'s grandparent; and Whitwell Memorial Funeral Home, Inc., which the Court has since dismissed from this action. (Docs. 1, 31). Plaintiff noted its potential liability to multiple claimants based on the possible application of Tennessee's "Slayer Statute," Tenn.Code Ann. § 31–1–106. (Doc. 1 at 6–7). Plaintiff averred that, if the Slayer Statute barred Mr. and Ms. Wallace's recovery, then the appropriate beneficiary under Tenn.Code Ann. § 31–1–104 (providing for intestate succession) was not clear. (*Id.*).

Plaintiff requested that the court discharge it from any liability and determine the rights of the named defendants as to C.W.'s life insurance benefits. (*See id.*). In April 2011, the Court permitted Defendant to deposit three checks totaling $35,-334.40—representing payment for each of the Policies' benefits plus interest, less payment for C.W.'s funeral arrangements—into the Court registry. (*See* Docs. 22–1, 28, 29). The Court then discharged Plaintiff, a disinterested stakeholder, from this action and from any liability arising from the various claims to the proceeds of the Policies. (Docs. 28, 45).

In August 2011, Ms. Wallace moved for summary judgment. (Doc. 46). She asserted that she and Mr. Wallace were the beneficiaries of the Policies on C.W.'s life and that § 31–1–106 does not apply in this case. (Doc. 47 at 7–10). Consequently,

she claimed that they were entitled to the Policies' death benefit. (*Id.* at 11).

The estate of Dena McNabb, through Administrator Rolin, did not oppose Ms. Wallace's Motion. (Doc. 51). Rather, it stated that it "has found no case law or statute that is contrary to the information provided in [the Motion]." (*Id.*). It therefore "ask[ed] this Court to determine the issues in this cause of action." (*Id.*).

C.G. and C.N., through their guardian *ad litem,* also did not oppose the Motion. (Doc. 52). They stated that they "located no applicable statute or case law that dictates a result contrary to that advocated by Samantha Wallace in her motion and supporting brief." (*Id.*). Therefore, they "defer[red] to this Court's interpretation and application of the applicable law in its determination of the proper beneficiaries to receive the funds deposited with the Court by [Plaintiff] less reasonable and necessary costs and expenses related to this matter." (*Id.*).

Although they were served with process, the other named Defendants did not respond to Ms. Wallace's Motion or otherwise appear in this action. (*See* Docs. 9–15).

## III. ANALYSIS

 An interpleader action such as this typically proceeds in two stages. In the initial stage, the "court determines whether the stakeholder has properly invoked interpleader," which includes a determination as to whether the court has jurisdiction and whether the stakeholder has properly invoked interpleader under the statute. *United States v. High Tech. Prods., Inc.,* 497 F.3d 637, 641 (6th Cir. 2007). When interpleader is available, "typically at the conclusion of the first stage, [the court] may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties

from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead." *Id.* On Plaintiff's unopposed Motion, the Court previously determined that Plaintiff properly invoked interpleader, and it subsequently discharged Plaintiff from liability. (*See* Docs. 39, 42, 43, 45).

■ This case is now in the second stage of interpleader proceedings, in which "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes...." *High Tech. Prods.,* 497 F.3d at 641. The parties do not dispute that, as to the parties' respective rights under the Policies, Tennessee substantive law controls. *See, e.g., Magruder v. Northwestern Mut. Life Ins. Co.,* 512 F.2d 507, 507–08 (6th Cir. 1975) (noting in the context of a life insurance interpleader action that "[j]urisdiction is based upon diversity of citizenship, and the interpleader statute, 28 U.S.C. § 1335[, so] Tennessee law controls").

Tenn.Code Ann. § 31–1–106 provides:

Any person who kills, or conspires with another to kill, or procures to be killed, any other person from whom the first named person would inherit the property, either real or personal, or any part of the property, belonging to the deceased person at the time of the deceased person's death, or who would take the property, or any part of the property, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right in the property, and the property shall go as it would have gone under § 31–2–104, or by will, deed or other conveyance, as the case may be; provided, that this section shall not apply to any killing done by accident or in self-defense.

The Tennessee Supreme Court addressed and interpreted § 31–1–106 in *Moore v. State Farm Life Ins. Co.,* 878 S.W.2d 946 (1994); *see also Bolin v. Bolin,* 99 S.W.3d 102 (Tenn.Ct.App.2002) (reit-

erating and applying the Tennessee Supreme Court's statutory interpretation). The court in that case considered whether § 31–1–106 barred a husband convicted of the vehicular homicide of his wife from collecting the benefits of his wife's life insurance policy. *See id.* at 946. The conviction in that case was predicated on a guilty plea and an indictment that charged the husband with "reckless killing of another by the operation of an automobile...." *Id.* at 947.

In *Moore,* the court held that "the language and purpose of [§ 31–1–106] requires that a beneficiary must have intended to kill the insured before the beneficiary is barred from taking the proceeds of the policy." *Id.* at 947–48. The court further determined that "reckless" killing—i.e., caused by the conscious disregard of a substantial and unjustifiable risk—did not implicate the level of intent required to trigger the application of § 31–1–106. *Id.* at 949–50. It reasoned that "the requirement of intent, rather than a certain degree of criminal culpability, is supportive of the purpose of the statute, which is to remove the temptation to kill for monetary gain." *Id.* at 948. This conclusion is consistent with other state court holdings. *See, e.g., Bolin,* 99 S.W.3d at 106 (relying on *Moore* and holding that a beneficiary "must have intended to kill the insured" before § 31–1–106 is applicable); *House v. Gibson,* 827 S.W.2d 310, 311 (Tenn.Ct.App.1992) ("We are of the opinion and hold that in the event the surviving spouse is found to have *intentionally* caused the death of his or her spouse, [Tenn.Code Ann.] § 31–1–106 excludes the surviving spouse as a beneficiary of a cause of action for wrongful death.") (emphasis added).

■ In this case, it is clear that Mr. Wallace and Ms. Wallace are the intended

beneficiaries of the three Policies. Each Policy and application stated that, absent some designation to the contrary, the insured's parents would be the beneficiaries. (*See* Doc. 1–1 at 6, 9, 26; Doc. 1–2 at 4–5). Mr. and Ms. Wallace are C.W.'s parents, and neither the Policies nor the applications identified any other beneficiaries. (*See* Doc. 1–1 at 6–20, 25–41; Doc. 1–2 at 1–19; Doc. 49 at 2). Thus, the record compels a conclusion that no party to this litigation contests: Thomas and Samantha Wallace are the Policies' intended beneficiaries, and if § 31–1–106 does not apply, they are entitled to recover the proceeds Plaintiff has deposited in the Court's registry.

In order for § 31–1–106 to bar Mr. and Ms. Wallace from taking the proceeds of the Policies, "they must have intended to kill [C.W.]." *Moore*, 878 S.W.2d at 947–48; *see Bolin*, 99 S.W.3d at 106. Ms. Wallace asserts—and has cited to evidence demonstrating—that neither she nor Mr. Wallace engaged in any intentional conduct that resulted in C.W.'s death.[4] (*See* Doc. 47, 49). No other party has identified evidence tending to establish a genuine dispute as to this fact. *See* Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Moldowan*, 578 F.3d at 374. Thus, based on the undisputed evidence of record, the Court concludes that neither Thomas Wallace nor Samantha Wallace intended to kill C.W.

The fact that Mr. and Ms. Wallace have been charged with criminally negligent homicide in connection with C.W.'s death does not trigger the application of § 31–1–106. The Court first notes that, in *Moore*, the Tennessee Supreme Court permitted recovery by a plaintiff convicted of vehicular homicide. *See Moore*, 878 S.W.2d at 947. That offense is defined as "the reckless killing of another by the operation of" a vehicle, which is "higher on the hierarchy of culpable mental states than the required intent requirement of . . . criminally negligent homicide." Tenn.Code Ann. § 39–13–213(a); *State v. Ashley*, Case No. W2004–01319–CCA–MR3–CD, 2006 WL 889567 at *5 (Tenn.Crim.App. Apr. 5, 2006) (addressing reckless endangerment and citing *State v. Goodwin*, 143 S.W.3d 771 (Tenn. 2004), for the proposition that the "[o]ffense of criminally negligent homicide addresses negligent conduct resulting in death that does not rise to the level of reckless conduct").

More to the point, it is "intent, rather than a certain degree of criminal culpability" that triggers § 31–1–106. *Moore*, 878 S.W.2d at 948. Even a conviction of criminally negligent homicide would not suggest that a criminal defendant intended to kill his victim; it is "a negligent crime, [which] by definition, is unintentional." *State v. Good*, Case No. E2009–00926–CCA–R3–CD, 2010 WL 3706625 (Tenn.Crim.App. Sept. 23, 2010); *see also, e.g., State v. Wilson*, 92 S.W.3d 391, 396 (Tenn.2002) (holding that a defendant's testimony that he did not intend to shoot his victim was consistent with criminally negligent homicide); *State v. Ramsey*, 903 S.W.2d 709, 714 (Tenn.Crim.App.1995) ("[I]ntent is not an element of criminally negligent homicide."). Because the charges of criminally negligent homicide against Mr. and Ms. Wallace do not suggest that they intended to kill C.W., those charges do not warrant the application of § 31–1–106. *See Moore*, 878 S.W.2d at 947–48; *Bolin*, 99 S.W.3d at 106.

Based on the undisputed evidence of record, the Court concludes that Mr. and Ms. Wallace are the beneficiaries of the

---

4. The Court recognizes the pendency of criminal proceedings related to C.W.'s death, and it notes that this Memorandum and Order is based solely on the uncontested record now before this Court.

Policies and that they did not intend to kill C.W. Thus, Tenn.Code Ann. § 31–1–106 is not implicated, there is no genuine dispute as to any material fact in this action, and Thomas Wallace and Samantha Wallace are entitled to the proceeds of the Policies on C.W.'s life. *See Moore,* 878 S.W.2d at 947–48; *Bolin,* 99 S.W.3d at 106. The Court will therefore **GRANT** Defendant Samantha Wallace's Motion for Summary Judgment (Doc. 46). *See* Fed.R.Civ.P. 56; *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

Before it enters judgment, the Court must resolve one outstanding issue. United States Magistrate Judge Susan Lee appointed attorney Tonya K. Cammon as guardian *ad litem* for minor Defendants C.G. and C.N. (Doc. 34). In her Order appointing Ms. Cammon—to which the parties did not object—Magistrate Judge Lee stated: "Upon completion of her duties as guardian *ad litem,* attorney Cammon shall be entitled to, and may move for a reasonable fee, which may be assessed in the Court's discretion against the life insurance benefits payable under the Policies." (*Id.* at 3). If Ms. Cammon intends to seek fees for her representation of the minor Defendants, she will be **ORDERED** to file a motion to that effect **no later than March 26, 2012.** Ms. Cammon will be **ORDERED** to append to her motion an itemization of costs and reasonable fees, along with a supporting affidavit. Ms. Cammon will be **INSTRUCTED** to consult with all other attorneys actively involved in this case and determine if any party objects to her motion, and she shall clearly indicate in her motion whether any party so objects. Should any party object to the motion, it shall file its written objections with the Court **no later than April 2, 2012.**

## IV. CONCLUSION

Accordingly, and for the reasons stated, Defendant Samantha Wallace's Motion for Summary Judgment (Doc. 46) is hereby **GRANTED.**

If attorney Tonya K. Cammon intends to seek fees for her service as guardian *ad litem* for minor Defendants C.G. and C.N., she is **ORDERED** to file a motion to that effect **no later than March 26, 2012.** Ms. Cammon is **ORDERED** to append to her motion an itemization of costs and reasonable fees, along with a supporting affidavit. Ms. Cammon is further **ORDERED** to consult with all other attorneys involved in this case to determine if any party objects to her motion, and she shall clearly indicate in her motion whether any party so objects. Should any party object to the motion, it shall file its written objections with the Court **no later than April 2, 2012.**