

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2018 Session

**DESIREE DANIELS DISTERDICK v. JOHN DISTERDICK**

**Appeal from the Circuit Court for Hamilton County**
**No. 12D184     L. Marie Williams, Judge**

_____

**No. E2017-00743-COA-R3-CV**

_____

In this divorce action presenting issues concerning the classification and distribution of the parties' assets, the trial court determined that an oil and gas investment purchased during the marriage was the wife's separate property, as was her engagement ring. The trial court fashioned an equitable distribution of the parties' marital property and debts and denied the wife's claim for alimony. In doing so, the trial court excluded any consideration of assets formerly owned by the parties that were held by a trust at the time of trial. The husband has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Stephen S. Duggins, Chattanooga, Tennessee, for the appellant, John Disterdick.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Desiree Daniels Disterdick.

**OPINION**

I. Factual and Procedural Background

This appeal involves the trial court's distribution of marital assets and debts as a result of the parties' divorce. The plaintiff, Desiree Disterdick ("Wife"), filed a complaint for divorce in the Hamilton County Circuit Court ("trial court") on January 17, 2012. The parties were married in 1986 and have five children of the marriage. In addition, Husband had one child from a prior relationship.[1] Wife alleged that she and the

_____
[1] The parties' children had all reached the age of majority by the time of trial.

defendant, John Disterdick ("Husband"), were experiencing irreconcilable differences or, in the alternative, that Husband was guilty of inappropriate marital conduct. Wife sought, *inter alia*, an award of alimony as well as the trial court's equitable distribution of the parties' marital estate.

On February 15, 2012, Husband moved the trial court for an order directing Wife to disburse $5,000.00 to him from a trust fund to enable Husband to retain an attorney. Husband asserted that Wife and her mother were the trustees of the fund, of which Husband and Wife were equal beneficiaries. According to Husband, Wife had recently refused to deposit his share of the trust income into their joint account. Husband claimed that his only regular monthly income was $1,525.00 in Social Security benefits; $198.00 from the Screen Actors' Guild; and approximately $400.00 in sales commissions. On March 9, 2012, the trial court entered an order directing Wife to pay $2,500.00 from marital funds to Husband's attorney. The court noted that at the final hearing, the court would consider the amounts paid to each party's attorney and the source of those funds when distributing the parties' marital property.

On May 10, 2012, Husband filed a motion seeking to replace the trustee of the Toluca Park Square Trust ("the Trust") and to transfer control of the Trust and another investment, the Soladino investment ("Soladino"), to an independent third party. Husband asserted that he had originally established the Trust from his separate, premarital assets in 1989. Husband claimed that he had also "located, initiated and funded" Soladino, which was an oil and gas investment. According to Husband, although Wife and her mother were named as the trustees of the Trust several years prior, he had historically managed the affairs of the Trust. Husband also claimed that he primarily had managed the business of Soladino, despite the fact that it was held in Wife's name. Husband asserted that when Wife decided to file for divorce, she prevented Husband from continuing to manage these investments and refused to distribute Husband's portion of the income from these investments to him. Husband alleged that Wife had also ignored tax responsibilities and other obligations with respect to these assets. Husband requested that the court transfer control of these investments to an independent third party.

Husband also filed an answer and counterclaim on May 17, 2012, reiterating his position concerning the Trust and Soladino. Husband asserted that he was seventy years of age and retired, with little income independent of these investments. Husband again asked the trial court to transfer administration of the Trust and Soladino to a third party and to consider Wife's dissipation of these assets in its ultimate distribution of property.

On June 5, 2012, Judge Jeffrey Hollingsworth entered an order recusing himself from this matter. Husband subsequently filed a motion seeking alimony *pendente lite* on

2

June 28, 2012.  In this motion, Husband stated that such alimony might be unnecessary if the trial court granted his motion regarding transfer of the administration of the Trust and Soladino.  Husband filed a statement of income and expenses, demonstrating that although his monthly expenses averaged $3,620.00, his total monthly income was only $2,191.00.

On February 7, 2013, Husband filed a renewed motion seeking to replace Wife as the trustee of the Trust.  In this motion, Husband stated that the parties had reached a temporary resolution of this matter but that Wife refused to authorize her attorney to sign the resultant order.  A subsequent mediation was attempted on April 3, 2013, with no settlement achieved.  Thereafter, on April 4, 2013, Husband filed yet another motion seeking Wife's replacement as trustee of the Trust as well as an award of alimony *pendente lite*.

Husband filed a subsequent motion on August 15, 2013, seeking the trial court's approval regarding a pending contract for sale of the marital residence.  The court approved the sale of the marital residence in an order dated October 14, 2013.  Relative thereto, the court directed that certain debts would be paid from the proceeds of the sale of the home, with the remaining net proceeds to be deposited into the registry of the court.

On February 18, 2014, Husband filed a motion requesting that the trial court direct Wife to resume paying Husband's automobile insurance, as well as the automobile insurance for the parties' adult children, as she had in the past.  Husband asserted that Wife had listed this expense on her statement of expenses and relied upon same as a basis for maintaining control over Soladino.  Husband also alleged that Wife had ceased paying the mortgage payments on the parties' parcels of unimproved real property known as the "Shelter Cove lots," such that this property was in danger of foreclosure.  Husband further sought an award of sanctions against Wife.

On March 27, 2014, the trial court, with Judge L. Marie Williams now presiding, entered an order directing that $2,000.00 being held in escrow (as a result of a prospective buyer failing to close the sale of the marital residence) be applied toward the overdue mortgage payments for the Shelter Cove lots.  The court also awarded a sanction of $1,000.00 to be charged against Wife at the time of the final judgment's entry.  On March 17, 2016, Wife filed a motion seeking to withdraw funds for payment of fees and improvements related to the Shelter Cove lots from the monies on deposit with the court from the sale of the marital residence.  The court granted this motion, noting the parties' agreement thereto, by order dated March 31, 2016.

On April 28, 2016, Wife filed a motion, pursuant to Tennessee Rule of Civil Procedure 12.03, seeking judgment on the pleadings concerning issues related to the Trust. Wife asserted that the Trust was the owner of the Trust assets while Husband and Wife were merely income beneficiaries. Wife further averred that because the parties no longer owned the Trust corpus, and because the Trust was not a party to these proceedings, the trial court could neither divide the Trust property nor in any way reform the Trust as Husband sought in his counterclaim. The trial court subsequently granted this motion by order dated May 27, 2016.

On June 24, 2016, Wife filed an income and expense statement, claiming monthly income of $2,500,00 and monthly expenses of $4,393.00, resulting in a monthly shortfall of $1,893.00. Wife also filed an asset and liability statement along with her proposed division of marital assets. On her asset statement, Wife listed "Soladino Energy Partners" as her separate property, valuing same at $25,000.00. Husband filed an updated income and expense statement, demonstrating that he had sufficient monthly income to pay his current expenses of $4,634.00 with no funds remaining.

Following a continuance of the parties' trial date, Wife filed a motion for contempt on July 22, 2016, alleging that Husband had encumbered the parties' Porsche automobile in violation of the statutory injunction. On August 4, 2016, Wife filed a motion requesting that the trial court require Husband to make the payments for the Shelter Cove lots pending trial. Wife alleged that she had been making those payments from her separate funds. The court entered an order on August 17, 2016, requiring Husband to pay the respective lot payments for August and September 2016.

Both parties subsequently filed proposed asset distributions. Wife again valued Soladino at $25,000.00 and identified the asset as her separate property. Husband listed this asset as marital property valued at $250,000.00.

The trial court conducted a bench trial on October 4, 2016, regarding the issues of property classification and distribution, Wife's claim for alimony, and Wife's allegation of contempt. The court found that the parties had been married since 1986 and had five adult children. The court noted that Husband was born in 1942 and that Wife was born in 1960. The court further noted that prior to the marriage, Wife acquired an associate degree and earned income from beauty pageants and public appearances. At the time the parties were married, Wife owned a bank account containing $30,000.00 and had invested in certain stock. During the marriage, Wife completed a bachelor's degree in finance. The court found that Husband was employed in the film industry prior to the marriage. At the time of trial, Husband was receiving social security benefits of $1,595.00 per month.

According to the trial court's findings, the parties experienced "many interpersonal difficulties throughout most of the marriage with evidence of physical and emotional abuse by the Husband against the Wife. However, there is evidence to establish that he 'mellowed out' in the last ten years or so." The court noted that the downturn in the economy, specifically the oil industry, had brought the parties to divorce. The court further found that the parties depended on the income derived from Soladino, which had recently lost most of its income-producing capability due to falling oil prices. Therefore, the parties could no longer afford the lifestyle to which they had become accustomed. The court also addressed the fact that the Trust, of which the parties were beneficiaries, was not a marital asset.

The trial court explained that before the marital property could be distributed, the property had to be properly classified. The court found that the evidence "overwhelmingly" established that Soladino was Wife's separate asset. The court also found that the value of Soladino had decreased substantially, such that it should be valued at $42,000.00. The court determined that Wife's jewelry, an art print, and a fur coat were also her separate property and that certain items of personalty were Husband's separate property. The remaining items of property were found to be marital and were distributed as follows:

| Asset: | Awarded to Wife: | Awarded to Husband: |
|---|---|---|
| Proceeds from sale of marital residence | $24,541.66 | |
| Shelter Cove lots | | $169,000.00 |
| Wife's Regions Bank account | 1,500.00 | |
| Wife's EPB Credit Union account | 64.99 | |
| Husband's EPB Credit Union account | | 9,700.86 |
| USAA | | 309.98 |
| 1998 Ford van | | 1,500.00 |
| 2005 Nissan Murano | | 3,000.00 |
| 2009 Saturn Vue | 6,200.00 | |
| 1981 Porsche | 102,000.00 | |
| Stuffed eagle | | 3,000.00 |
| Scrimshaw Whale's Tooth (2) | 1,150.00 | 1,150.00 |
| Antique Persian rug | | 4,000.00 |
| Generator | | 500.00 |
| Furnishings (in possession of each) | 5,000.00 | 5,000.00 |
| Film Equipment | | 600.00 |
| Total:[2] | $140,456.65 | $197,760.84 |

---

[2] The trial court's order did not show a calculation of the total award of assets to Wife or Husband. These totals have been calculated by adding the value of the assets in each party's column.

The trial court then distributed the parties' marital debt as follows:

| Liability: | Assessed to Wife: | Assessed to Husband: |
|---|---|---|
| Mortgage – Shelter Cove lots | | $124,000.00 |
| Property tax – Shelter Cove lots | | 1,484.00 |
| Chase credit card | $9,000.00 | |
| Wife's attorney's fees | 30,000.00 | |
| Husband's attorney's fees | | 25,000.00 |
| Ashley Furniture | 1,100.00 | |
| Total:[3] | $40,100.00 | $150,484.00 |

The trial court determined that Wife had paid most of the marital expenses as well as expenses for the parties' adult children during the pendency of the litigation. The court also found that any amounts expended for the parties' adult children were gifts to those children. Pursuant to an Agreed Order entered on January 7, 2013, Wife received all of the income from Soladino and each party received one-half of the trust income pending trial.[4] The court found that Wife had received at least $330,993.00 in income from Soladino during the pendency of the divorce proceedings, which income the court determined to be Wife's separate property because it found Soladino to be Wife's separate property. Wife also received $137,000.00 in marital income. During the same time period, the court found that Husband received about $200,000.00 in income.

The trial court also determined that Wife had utilized approximately $42,000.00 of her separate assets to preserve the marital residence and Shelter Cove lots, which were marital assets. The court thus added $40,000.00 to the assets allocated to Husband. Because Wife contributed marital and separate funds to maintain the household and pay joint bills during the pendency of the litigation, the court expressly found the above distribution to be equitable.

With regard to the statutory factors contained in Tennessee Code Annotated § 36-4-121, the trial court found that the parties' marriage was of substantial duration. The court noted that it had considered and addressed the parties' ages, health, vocational skills, and other related factors. The court further found that Wife did have greater employability than Husband at the time of trial and that all remaining factors should be equally weighted.

---

[3] The trial court's order did not show a calculation of the total amount of liabilities assessed to Wife or Husband. These totals have been calculated by adding the value of the liabilities in each party's column.

[4] This order appears in the technical record as an exhibit presented during trial.

Concerning alimony, the trial court determined that because the parties' respective needs and abilities to pay were substantially equal, alimony would not be awarded. The court also declined to impose sanctions upon Husband for his violation of the statutory injunction due to the encumbrance placed on the Porsche automobile.

On January 13, 2017, Husband filed a motion seeking additional findings and/or alteration of the trial court's judgment, arguing that the court had failed to address the matter of the parties' boat as well as additional loans listed on Husband's liability statement. Five days later, the trial court entered a "Final Decree," incorporating its earlier order and declining to address Husband's motion. On February 9, 2017, Wife filed a motion to alter or amend, asserting that the trial court should (1) require Husband to take any action necessary to remove Wife from the liability associated with the Shelter Cove lots, (2) require Husband to have the lien removed from the Porsche, (3) award the parties' boat to Wife, and (4) amend the decree to reflect that funds on deposit with the clerk's office from the sale of the marital residence actually totaled $23,493.40 and should be released to Wife immediately.

The trial court entered an order regarding the motions on March 7, 2017, wherein it awarded the parties' boat to Wife while requiring Husband to pay any lien he had placed thereon. Finding that Wife had utilized her separate funds to support the family and pay joint obligations, the court also ordered that Husband was to be solely responsible for any loans he owed to individuals. The court further ordered Husband to take action to have Wife's name removed from the debt on the Shelter Cove lots and to have the lien on the Porsche released. The court amended the Final Decree to reflect that Wife would receive $23,493.40 in monies on deposit with the court clerk's office and ordered those funds to be released to Wife within thirty days. Husband timely appealed.

## II. Issues Presented

Husband presents three issues for our review, which we have restated slightly:

1.  Whether the trial court erred by classifying Soladino and the diamond ring as Wife's separate property.

2.  Whether the trial court erred by failing to divide the parties' marital property equitably.

3.  Whether the trial court erred by excluding any consideration of issues related to the Trust.

7

Wife presents the following additional issues, which we have also restated slightly:

4. Whether Husband's appeal should be dismissed for failure to comply with Tennessee Rule of Appellate Procedure 7.

5. Whether the trial court erred by determining that the amounts expended by Wife for the parties' adult children during the litigation, pursuant to the January 7, 2013 order, were gifts to those children.

6. Whether the trial court erred by failing to award Wife alimony *in solido* to reimburse her for Husband's half of payments made pursuant to the January 7, 2013 order.

7. Whether Wife should receive an award of attorney's fees on appeal.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Stratienko v. Stratienko*, 529 S.W.3d 389, 398-99 (Tenn. Ct. App. 2017), *perm. app. denied* (Aug. 16, 2017) (citing *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV. Rule 7 of the Rules of the Court of Appeals of Tennessee

As a threshold issue, Wife argues that Husband's appeal should be dismissed because Husband failed to comply with the requirements of Rule 7 of the Rules of the Court of Appeals of Tennessee. Rule 7 requires that a brief in a domestic relations case that raises an issue regarding classification or division of property contain a tabulation of the parties' property and debts with values assigned by each party and the trial court, including citations to the record identifying where such information may be found. *See* Tenn. Ct. App. R. 7. Husband provided no such tabulation in his original brief; however, he did comply with Rule 7's requirements in his reply brief.

As this Court has explained with regard to the requirements of Rule 7:

> This Court has previously held "'where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements.'" *Slaughter v. Slaughter*, No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. May 8, 2008) (quoting *Stock v. Stock*, No. W2005-02634-COA-R3-CV, 2006 WL 3804420, at *5, n. 3 (Tenn. Ct. App. 2006) (quoting *Howell v. Howell*, No. W2001-01167-COA-R3-CV, 2002 WL 1905307, at *4 (Tenn. Ct. App. 2002) (citing *Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000)). "This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property." *Slaughter*, 2008 WL 1970491 at *2 (citations omitted). This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7. *See, e.g., Slaughter v. Slaughter*, No. W2007-01488-COA-R3-CV, 2008 WL 1970491 (Tenn. Ct. App. May 8, 2008); *Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000); *Durant v. Durant*, No. M2001-00691-COA-R3-CV, 2002 WL 772923 (Tenn. Ct. App. April 30, 2002).

*Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010). Because Husband remedied this deficiency by providing a proper

Rule 7 tabulation in his reply brief, we determine that no waiver has occurred. We will therefore proceed to address the parties' issues on the merits.

## V.  Classification of Separate Property

Husband argues that the trial court improperly classified Soladino and Wife's diamond engagement ring as her separate property. Regarding classification of property pursuant to divorce, this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). Issues regarding the classification of assets present questions of fact. *See Stratienko*, 529 S.W.3d at 398-99. Our review of the trial court's ruling regarding a question of fact is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d); *Burress v. Shelby Cty.*, 74 S.W.3d 844, 846 (Tenn. Ct. App. 2001).

Concerning the definition of "marital property," Tennessee Code Annotated § 36-4-121(b)(1)(A) (2017) provides in pertinent part:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

10

By contrast, "separate property" is defined as:

(A)     All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;

(B)     Property acquired in exchange for property acquired before the marriage;

(C)     Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)     Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E)     Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F)     Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2).

It is well settled that assets acquired during a marriage are presumed to be marital property and that a party desirous of disputing this classification has the burden of proving by a preponderance of the evidence that the asset is separate property. *See Owens v. Owens,* 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). This presumption can be rebutted, however, by evidence of circumstances or communications clearly indicating an intent that the property remain separate. *See Batson v. Batson,* 769 S.W.2d 849, 858 (Tenn. Ct. App. 1989).

A. Soladino

Husband asserts that he was the one who originally purchased Soladino through the Trust and also managed this asset throughout the bulk of the marriage. According to Husband, the title to Soladino was later changed to Wife's name rather than the Trust for "tax reasons." Husband claims that the purchase funds used to buy Soladino from the Trust when the ownership transfer occurred were withdrawn from a bank account that

11

was regularly used to pay marital obligations and contained funds from marital income streams.

By contrast, Wife contends that the trial court properly found Soladino to be her separate property. Wife argues that the evidence demonstrated that she purchased this asset with her separate funds. The trial court agreed, stating that "the evidence overwhelmingly substantiates the position of [Wife] that the property is separate." Upon careful review, we determine that the evidence does not preponderate against the trial court's finding.

In ruling on this issue, the trial court considered the deposition testimony of Doug Eberts, a California resident and the owner of Sierra Resources, an oil and gas operator. Mr. Eberts testified that Soladino was formed in the early 1990s when various limited partners purchased units at $25,000.00 each. According to the testimony of Mr. Eberts and the parties, the parties purchased one such unit, which was originally purchased through and held as part of the Trust.

Mr. Eberts further testified that some years later, Husband contacted him via telephone and asked him to place the asset in Wife's sole name because Husband had "issues with the IRS." Although Mr. Eberts could not recall the details surrounding how the ownership change was effectuated, he testified that the income checks were sent to Wife in her sole name from that date forward. Mr. Eberts further reported that annual K-1s had been generated from that date forward, reflecting Wife as an individual limited partner. Mr. Eberts related that Husband recently contacted him and asked if ownership of the investment could be "subtly" changed. Mr. Eberts informed him that any transfer would have to be made by Wife because she was the owner.

It is undisputed that Soladino was originally an asset owned by the Trust. It is also undisputed that during the parties' marriage, in or around 1997, the Trust sold its interest in Soladino back to Mr. Eberts's company. Wife testified that she then purchased that interest from Mr. Eberts's company, utilizing $25,000.00 from her "separate" bank account. Wife identified this bank account as her Regions Bank account, in which she had deposited premarital savings. The exhibits demonstrate that this bank account was held solely in Wife's name. In relevant part, the trial court found in its order:

> Much of the proof in this case focused on the marital or separate nature of Soladino. The Court finds the evidence overwhelmingly substantiates the position of [Wife] that the property is separate. Both parties relied to a large extent on the testimony of Robert Eberts concerning value of, history of, and title to Soladino. The Court found Mr. Eberts' testimony very persuasive. He is clear in his recollection that [Husband]

instructed him to put Soladino in the name of [Wife]. He is clear that he titled it on [Husband's] instruction so that [Wife] was the 100 percent owner of any interest either of them had in Soladino. Further, the evidence establishes the $25,000.00 interest held by the Disterdicks was purchased at [Husband's] instruction and held as Toluca Park Square Trust. That would have been in 1992. At some time prior to 1997, [Husband] instructed that any future checks go to [Wife] and that the interest be titled in her name. There also is evidence that [Wife] paid cash to Robert Eberts for the partnership interest in the amount of $25,000.00. [Husband] did not request the interest be placed back in his name until after divorce was on the horizon and he was informed at that time that could not be accomplished.

Husband asserts that the trial court's ruling was erroneous because Wife admitted that her Regions Bank account, the undisputed source of funds for Wife's purchase of the Soladino interest, contained monies from marital income streams and was used to pay marital expenses. Although Wife testified that her Regions Bank account had been utilized to pay "family" and "marital" expenses for several years, she stated that the monies in the account either came from premarital sources, her share of the Trust income, or the income from Soladino. Wife acknowledged that she had owned the Regions Bank account for many years; however, the sole proof presented regarding the source of funds that had been deposited therein prior to the late-1990s transfer of ownership in Soladino was Wife's testimony that the funds at that time came from premarital savings.

Tennessee Code Annotated § 36-4-121(b)(2)(A) and (B) provide that "[a]ll real and personal property owned by a spouse before marriage" as well as "[p]roperty acquired in exchange for property acquired before the marriage" will be considered a spouse's separate property. As our Supreme Court has elucidated:

> In addition to the provisions of Tenn. Code Ann. § 36-4-121(b)(1)(b), courts in Tennessee have recognized two methods by which separate property may be converted into marital property: commingling and transmutation. Although this Court previously has not addressed commingling and transmutation, several opinions of the Court of Appeals have explained the concepts as follows:
>
>> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate property is treated in such a way as to

13

give evidence of an intention that it become marital property . . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987); *Lewis v. Frances*, No. M1998-00946-COA-R3-CV, 2001 WL 219662, at *8, 2001 Tenn. App. LEXIS 140, at *24-25 (Tenn. Ct. App. March 7, 2001), *perm. app. denied* (Tenn. Oct. 8, 2001); *Sartain v. Sartain*, 03A01-9707-CH-00297, 1998 WL 751462, at *4, 1998 Tenn. App. LEXIS 722, at *9 (Tenn. Ct. App. Oct. 29, 1998); *Hofer v. Hofer*, No. 02A01-9510-CH-00210, 1997 WL 39503, at *3-4, 1997 Tenn. App. LEXIS 74, at *8 (Tenn. Ct. App. February 3, 1997); *Pope v. Pope*, No. 88-58-II, 1988 WL 74615, at *3, 1988 Tenn. App. LEXIS 449, at *7-8 (Tenn. Ct. App. July 20, 1988).

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002).

Wife testified that her individually titled Regions Bank account contained premarital savings, upon which she had previously placed a value of $30,000.00. Wife further testified that these premarital funds were the source of the purchase monies utilized for the repurchase of Soladino in the late 1990s, which asset was then titled solely in her name. Although Husband stated that marital income streams were deposited into Wife's Regions Bank account, there is no evidence that such deposits occurred at or before the time of the Soladino change of ownership.

The trial court clearly credited Wife's testimony regarding the source of the funds in her Regions Bank account at the time of the ownership change. As previously explained, "where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings." *See Keyt*, 244 S.W.3d at 327. The trial court herein found that Soladino was Wife's separate property based on its view that the evidence "overwhelmingly" supported Wife's position. We accord this finding great deference and determine that the evidence does not preponderate against it.

We also do not find the fact to be dispositive that Wife listed her Regions Bank account as a marital asset on her asset and liability statement presented at trial. As explained, the transfer in ownership in Soladino took place in the 1990s. Wife testified that the $25,000.00 with which she purchased Soladino, following the sale of such interest by the Trust, came from premarital savings she had amassed in her individually titled Regions Bank account at that time. Although testimony suggested that marital income may have been subsequently commingled with the funds in this account, no other proof was presented regarding the source of funds in this account at the time of the Soladino purchase by Wife. Based on the evidence presented, we conclude that the evidence preponderates in favor of the trial court's determination that Soladino was Wife's separate property because Soladino represented "[p]roperty acquired in exchange for property acquired before the marriage." *See* Tenn. Code Ann. § 36-4-121(b)(2)(B).

## B. Diamond Engagement Ring

Husband also asserts that Wife's diamond engagement ring, which he valued at $35,000.00, was marital property because "costly changes [to the ring] resulted in [its] transmutation to marital property long after the parties married." Husband argues that the ring was reset and additional diamonds were added at substantial cost following the parties' marriage. Husband posits that such improvements following the parties' marriage constituted transmutation of this asset to marital property. Upon thorough review, we disagree with Husband's contentions regarding this issue.

The proof was undisputed that the ring was given to Wife as an engagement ring upon the occasion of Husband's proposal. Engagement rings are typically regarded as conditional gifts, with such gift only being completed upon the occurrence of marriage between the parties. *See Crippen v. Campbell*, No. E2007-00309-COA-R3-CV, 2007 WL 2768076, at *4 (Tenn. Ct. App. Sept. 24, 2007). Because the parties did marry, the engagement ring was a completed gift and Wife's separate property. *See* Tenn. Code Ann. § 36-4-121(b)(2)(D).

Transmutation requires evidence that separate property be "treated in such a way as to give evidence of an intention that it become marital property." *See Langschmidt*, 81 S.W.3d at 747. Wife testified that the engagement ring and other items of jewelry were gifts to her. Husband admitted that the ring was a gift, claiming that this gift was later improved after the marriage. However, Husband provided no proof regarding the cost of such improvements, how the cost was paid, or whether the improvements to the ring were also in the nature of a gift. The trial court found all of Wife's jewelry, including the engagement ring, to be Wife's separate property, placing a total value of $35,000.00 thereon. We conclude that the evidence does not preponderate against the trial court's

15

classification of Wife's jewelry as her separate property based on her testimony that these assets were gifted to her by Husband.

## VI. Equitable Distribution of Marital Property

Husband also argues that the trial court's distribution of the parties' marital property was inequitable because it was heavily weighted in Wife's favor. Wife asserts that the distribution was equitable when considering the statutory factors. Upon our thorough review of the evidence presented, we agree with Wife on this issue.

The trial court awarded to Wife marital assets valued at $139,408.39.[5] The court also awarded to Wife the parties' boat in a subsequent order, placing a value on this asset of $25,000.00, thus increasing her total asset award to $164,408.39. Husband was awarded marital assets valued at $197,760.84, plus an assessment of $40,000.00 because Wife had expended separate funds in that approximate amount to preserve marital assets during the pendency of the divorce proceedings, thus increasing Husband's share of marital assets to $237,760.84.

The trial court assessed marital debt to Wife in the amount of $40,100.00 while Husband was assessed marital debt in the amount of $150,484.00. Husband claimed that he owed to third parties additional undocumented loans of $45,907.00 in value, which the trial court also assessed to Husband. Based on these amounts, the trial court's distribution of marital assets and debts resulted in a net distribution of $124,308.39 to Wife and $41,369.84 to Husband. *See Owens*, 241 S.W.3d at 490 ("The division of the marital estate includes both the division of the marital property and the allocation of the marital debt."). Accordingly, Wife was awarded 75% of the net marital estate, and Husband was awarded 25% of the net marital estate.

Our statutory scheme concerning the equitable division of marital property provides:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

---

[5] This amount represents the above-totaled assets awarded to Wife minus the difference in value of the proceeds from the sale of the marital residence.

(3)    The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)    The relative ability of each party for future acquisitions of capital assets and income;

(5)(A)    The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B)    For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6)    The value of the separate property of each party;

(7)    The estate of each party at the time of the marriage;

(8)    The economic circumstances of each party at the time the division of property is to become effective;

(9)    The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)    In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of

control, and a control premium, if any should be relevant and supported by the evidence;

(11)  The amount of social security benefits available to each spouse; and

(12)  Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2017).

The trial court found this to be a marriage of substantial duration. We agree with that assessment. As the court noted, Husband was born in 1942, and Wife was born in 1960. The court also found that Wife had recently obtained a bachelor's degree in finance in 2012, and the evidence substantiates this finding as well. Although not addressed by the trial court in its order, Husband testified to holding multiple degrees, including a bachelor's degree in mechanical engineering, a master's degree in business administration, a master's degree in financial services, and a doctor of jurisprudence. Husband was also certified in the fields of financial planning and insurance. With regard to employability, the court found that Wife had greater opportunity for future employment than Husband. The court likely based this finding on the fact that Wife was not yet of retirement age, although the proof demonstrated that Wife had no significant employment history.

Regarding factor (5)(A), which concerns "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property," the trial court found that Wife had received over $330,000.00 in separate assets, representing her income from Soladino, during the pendency of the divorce proceedings and that she utilized a portion of these monies to contribute to the preservation of marital assets and payment of marital expenses. This fact appears to have been given great weight by the trial court in its distribution of marital property. Otherwise, with regard to the statutory factors, the trial court determined that the remaining factors weighed equally. We agree with the trial court's findings.

As this Court has previously explained with regard to a trial court's distribution of marital property:

A division of marital property is not rendered inequitable simply because it is not precisely equal, *Robertson v. Robertson,* 76 S.W.3d 337, 341 (Tenn. 2002), *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn. 1996), or because each party did not receive a share of every piece of marital

property, *Morton v. Morton,* 182 S.W.3d 821, 833-34 (Tenn. Ct. App. 2005); *Manis v. Manis,* 49 S.W.3d [295,] 306 [(Tenn. Ct. App. 2001)]. The fairness of the trial court's approach is inevitably reflected in its results. *Altman v. Altman,* 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005); *Bolin v. Bolin,* 99 S.W.3d 102, 107 (Tenn. Ct. App. 2002).

The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) in light of the evidence that the parties have presented. *Flannary v. Flannary,* 121 S.W.3d at 650-51; *Tate v. Tate,* 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard,* 986 S.W.2d [220,] 230 [(Tenn. Ct. App. 1998)]. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly,* 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson,* 769 S.W.2d 849, 859 [(Tenn. Ct. App. 1988)]. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton,* 182 S.W.3d at 834. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly,* 130 S.W.3d at 785-86; *Gratton v. Gratton,* No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard,* 986 S.W.2d at 231.

*Owens*, 241 S.W.3d at 490. *See Manis*, 49 S.W.3d at 306 (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

In this matter, although the trial court's distribution of marital property is not mathematically equal, we determine that it is equitable based on consideration of the statutory factors. The evidence demonstrated that each party had significant income to draw from following the marriage without any consideration of employment. Although Husband was several years older than Wife, he remained in excellent physical condition and had significant and varied employment experience. Wife had recently obtained a bachelor's degree in finance, which would increase her employment potential, and she noted no significant physical ailments. Thus, it would appear that the parties enjoyed

relatively equal positions with regard to their ability to acquire assets and income in the future. Similarly, each party had contributed to the marital estate as either homemaker or wage earner.

Although Wife maintained a slightly larger separate estate following the divorce, the evidence demonstrated that Wife had contributed a substantial amount of income from her separate asset, Soladino, to preserving the marital assets during the pendency of the divorce proceedings. The trial court found this statutory factor most significant, thereby awarding Wife a greater share of the net marital estate. We determine that the manner in which the trial court weighed the factors contained in Tennessee Code Annotated § 36-4-121(c) is consistent with logic and reason and that the result to these parties was equitable. As such, we conclude that the trial court's distribution of marital property does not lack proper evidentiary support and does not result in an "error of law or misapplication of statutory requirements and procedures." *See Keyt*, 244 S.W.3d at 327. We therefore affirm the trial court's distribution of marital assets and debts in this matter.

## VII. The Trust

Husband argues that the trial court erred by refusing to consider any matters relating to the Trust. On April 28, 2016, Wife filed a motion seeking a ruling from the trial court that the Trust was the owner of the Trust assets while Husband and Wife were merely income beneficiaries. Wife averred that because the parties no longer owned the Trust property, and because the Trust was not a party to these proceedings, the trial court could neither divide the Trust property nor in any way reform the Trust as Husband sought in this counterclaim. The trial court subsequently granted Wife's motion by order dated May 27, 2016.

Husband contends that as a result of this ruling, the trial court refused to allow Wife to be questioned during trial regarding her utilization of the Trust income for expenditures related to marital obligations. Husband argues that if Wife were making expenditures from the Trust principal or income in which Husband was entitled to share, such expenditures should impact the court's equitable distribution. Wife posits that the trial court's ruling was correct because the Trust, rather than the parties, undisputedly owns the Trust assets. According to Wife, the Trust document makes clear that all interest in the assets transferred to the Trust belongs to the Trust and that Husband and Wife are simply beneficiaries of the income from the Trust for their lifetimes. We agree with Wife.

The Trust's establishing declaration appears in the appellate record, and it provides as follows:

20

We, [R.B.M.] and John W. Disterdick, of the County of Los Angeles, State of California, Trustees (hereinafter referred to as "Trustees" or "Trustee"), hereby declare that John Disterdick and Desiree Disterdick, husband and wife (hereinafter referred to collectively as "Trustors" and individually as "Trustor") <u>have transferred and delivered to the Trustee, without consideration, all of the Trustors' right, title and interest in and to that certain property described in Schedule A attached hereto. All property now or hereinafter subject to this trust shall constitute the Trust Estate and shall be held, managed and distributed as herein provided.</u> Property hereafter transferred to the Trustee may be described on a schedule attached hereto or may be reflected only on the books and records of the Trustee or by the transfer of record title to the Trustee with the same force and effect as though described in a schedule attached to this instrument. This Declaration of Trust, the Trust Estate and all of the trusts created hereunder shall be known collectively as THE TOLUCA PARK SQUARE TRUST.

(Emphasis added.) Ergo, based on the language of the initiating document, the Trust assets are owned by the Trust rather than the parties.

Husband relies upon the unreported decision of *Creswell v. Creswell*, No. 03A01-9804-CH-00151, 1999 WL 320434, at *1 (Tenn. Ct. App. May 21, 1999), as support for his contention that the Trust should have been considered a marital asset. In *Creswell*, this Court affirmed a distribution of marital property pursuant to divorce that purportedly included the present value of certain assets held by trusts. *Id*. at *3. However, no mention is made in *Creswell* of the trusts' establishing documentation or whether any issue was raised regarding the trial court's classification of such assets as marital.

We determine this Court's opinion in *Wheeler v. Wheeler*, No. M2012-02154-COA-R3-CV, 2014 WL 1512828, at *8 (Tenn. Ct. App. Apr. 15, 2014), to be more instructive concerning the issue at hand. In *Wheeler*, the wife was the trustee and a current beneficiary of a trust established by her father's last will and testament. *Id*. The corpus of the trust was a condominium in Florida, which had been owned by the wife's father prior to his death and which was transferred to the trust upon his death. *Id*. The husband argued that this condominium "was Wife's separate property, which subsequently transmuted to marital property due to repairs and improvements [the husband] personally made to the condominium." *Id*. at *7.

The *Wheeler* Court determined that the condominium was neither marital property nor the wife's separate property because it was owned by the trust. *Id*. Specifically, the *Wheeler* Court stated:

According to the record, the condominium was devised to the Elizabeth B. Wheeler Children's Trust, not to Wife, and it remains an asset of that trust. Because Wife did not inherit the condominium, it is not and never has been her separate property. Therefore, it could not transmute to marital property regardless of Husband's efforts to maintain and improve the condominium. We, therefore, affirm the ruling that the condominium is not marital property.

*Id.* at *8.

Similarly, in this matter, the Trust assets were owned by the Trust rather than the parties. For this reason, and because the Trust was not a party to these proceedings, the trial court correctly ruled that it had no authority over the Trust or its assets. We therefore affirm the trial court's ruling on this issue.

### VIII. Payments for Adult Children and Alimony *in Solido*

Wife asserts that the trial court erred by concluding that any payments made for the benefit of the parties' adult children were gifts to those children. According to Wife, because the January 7, 2013 agreed order provided that Wife would pay all "joint or marital expenses" during the pendency of the proceedings, including "any . . . expense typically paid from the parties' joint account," and because those expenses included expenses for the adult children, Husband acquiesced in such payments and should have been assessed his half of those expenses. Wife essentially argues that because the trial court found that she received over $330,000.00 in separate income from Soladino during the pendency of these proceedings and because she expended this entire amount on marital expenses, including expenses for the parties' children, the trial court should have awarded her alimony *in solido* by ordering Husband to repay his half of this amount. The trial court, however, determined that $42,000.00 of this income was spent on preservation of marital assets and assessed a like amount to Husband in the division of marital assets.

We determine that the trial court's approach was equitable with regard to equalization of the monies spent by the parties toward the preservation of marital assets pending divorce. In its equitable distribution of marital property, the trial court properly considered Wife's expenditure of income from her separate asset to preserve marital assets, thereby affording Wife a greater share of the net marital estate. With regard to amounts expended for the benefit of the parties' adult children, we note that "a parent cannot be ordered by the courts to pay child support for an adult child," and any such payments made by a parent are considered to be voluntary. *See Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001) (citing *Blackburn v. Blackburn*, 526 S.W.2d 463,

465 (Tenn. 1975)). We therefore determine Wife's issue regarding alimony *in solido* to be without merit.

## IX. Attorney's Fees on Appeal

Finally, Wife asserts that she should receive an award of attorney's fees on appeal because Husband's issues are without merit. Wife posits that Husband offered no credible arguments with regard to reversing the trial court's classification or distribution of assets. Wife apparently asserts that Husband's appeal is frivolous pursuant to Tennessee Code Annotated § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Although Husband was not successful with regard to the issues he raised, we determine, in our discretion, that Husband's appeal was not so devoid of merit as to warrant an award of attorney's fees to Wife. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (citing *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) ("The decision to award damages for the filing of a frivolous appeal [under section 27-1-122] rests solely in the discretion of this Court.")); *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). The discretion to determine whether an appeal is frivolous should be exercised "'sparingly so as not to discourage legitimate appeals.'" *See Eberbach*, 535 S.W.3d at 475 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We therefore deny Wife's request for attorney's fees on appeal.

## X. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Wife's request for an award of attorney's fees on appeal is denied. We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are taxed to the appellant, John Disterdick.

_____
THOMAS R. FRIERSON, II, JUDGE